## W. T. WAGGONER v. JOSEPH TINNEY.

No. 1855. Decided January 27, 1909.

</div>

**1.—Vendor and Purchaser—Executory Sale— escission.**

Where the vendor of land retained a right to rescind on nonpayment of installments of purchase money, a subsequent conveyance to another purchaser operated as such rescission if it included in its boundaries the land previously sold and in payment for which the purchaser had made default. (P. 258.)

**2.—Boundaries—Judgment—County School Land.**

In a controversy between a county claiming land as within the survey granted it for county school purposes and one claiming it as included in that granted by prior patent of an adjoining survey owned by him, a judgment in favor of the county established its title to the land as a part of the tract held in trust by it for school purposes, and its conveyance of the entire land so held passed title to the purchaser, though the boundaries described in its grant from the State did not, in fact properly include the land so recovered. (P. 258.)

**3.—Vendor and Purchaser—Boundaries—Intention.**

A county which claimed two leagues of school land by grant from the State and had, in litigation with an adjoining proprietor, fixed its boundaries so as to include an excess of acreage, and land not within the description given in its grant when properly located, conveyed it to a purchaser by the same description of metes and bounds as given in the grant. The deed recited that all of said county school land was conveyed, and estimated the acreage as including such excess; and, by the order of the Commissioners Court authorizing the sale, the county judge was to ascertain the acreage and fix the purchase price by the acre accordingly; which he did, and included the excess in the acreage by which the purchase price was fixed. Held that the land conveyed was not limited to the boundaries named in the deed, but, if such was the intention of the parties, included all that held by the county as school land. (Pp. 256–259.)

**4.—Vendor and Vendees—Action—Parties.**

In a suit against a vendee by a subsequent purchaser from the vendor who claimed that the sale to the first had been rescinded, on default in payment, by the vendor's conveyance to him, the vendor himself should have been made a party, so that the rights of all could be adjusted. (P. 259.)

Error to the Court of Civil Appeals for the Second District, in an appeal from Baylor County.

Waggoner sued Tinney and prosecuted error from a judgment for defendant. On its affirmance he obtained writ of error from the Supreme Court.

*J. T. Montgomery* and *Miller & Dycus,* for plaintiff in error.— Upon the proposition that the deed to Waggoner was intended to and did pass title to the land in controversy, we submit the following authorities: Jones v. Powers, 65 Texas, 212; McAllen v. Raphael, 11 Texas Civ. App., 116; Bell v. Wright, 59 S. W., 615; Bell v. Wright, 60 S. W., 873; Linney v. Wood, 66 Texas, 27; Devlin on Deeds, secs. 835, 836; 13 Cyc., 628; 16 Century Digest, Title "Deeds," sec. 314.

The judgment in the case of DeWitt v. Ayres conclusively adjudicated that the land in controversy was a part of the Young County school land, and Ayres having been a party to the judgment and a vendee of Young County was bound thereby. Rev. Stats., art. 5252; Johnson v. Hardin, 81 Texas, 40; Brown v. Hearn, 66 Texas, 63.

*D. F. Goss,* for defendant in error.—The evidence in the case showed and the court found as a fact that the deed from Young County to Waggoner, did not include the land in controversy, and said Waggoner, not showing title in himself, was not entitled to said land, nor to recover same from the defendant Tinney. Kinney v. Vinson, 32 Texas, 127; Hughes v. Lane, 6 Texas, 289; Devine v. Keller, 73 Texas, 367.

In action of trespass to try title it is not competent to show that it was the intention to embrace land not in fact included in the description given in the deed; and the deed from Young County to Waggoner not having included in its description the land in controversy, but other and different land, Waggoner was not entitled to recover the land in controversy, and the court correctly so found, and the intention of Young County and of Waggoner that said land should

be conveyed by said deed, if such intention existed, could not aid said deed, nor was the proof of such intention by parol evidence competent in a suit between Waggoner and Tinney. Watts v. Howard, 77 Texas, 71; Collins v. Ball, Hutchins & Co., 82 Texas, 266; Cavin v. Hill, 83 Texas, 76.

The judgment in the case of DeWitt v. Ayres determined nothing as to respective rights and liabilities of Ayres and Young County as against each other, for the reason that they were both parties defendant in said suit and there were no issues between them. They were not adversary parties. Therefore said judgment determines nothing as to the respective rights of the plaintiff in this suit, Waggoner and the defendant, Tinney, as against each other. Sandoval v. Rosser, 26 S. W., 932; Railway v. Railways, 83 Texas, 517; Freeman on Judgments, sec. 158.

MR. JUSTICE BROWN delivered the opinion of the court.

W. T. Waggoner instituted this suit in the District Court of Baylor County against the defendant in error, to recover a tract of land claimed to be a part of the public school lands granted by the State of Texas to Young County, located in Baylor County, Waggoner claiming that Young County had conveyed the land to him. The case was tried before the judge, who filed conclusions of fact which give a detailed account of the transaction between the parties and from which we make the following condensed statement, showing the material facts upon the question here presented.

(1) The State of Texas granted to Young County two leagues of land for school purposes, located in Baylor County, for which a patent was issued to said Young County, and in which the land was described as follows: "Beginning at the S. W. corner of survey No. 858 in the name of A. G. McNeil, a stake on the north bank of Big Wichita River, from which three cottonwoods bear west, and hackberry brs. S. 68 degrees E. 170 vrs.; thence S. 30 degrees E. crossing the river at 1149 vrs. to a rock mound in prairie valley; thence S. 60 degrees W. crossing Church Creek at 440 varas, at 6990 varas a stake in the prairie; thence N. 30 degrees W. 5913 vrs. cross Big Wichita at 7153 vrs. a stake in valley near a bunch of Chittum trees, from which a Chittum ten inches in diameter bears N. 77 degrees W. 9 varas, and another Chittum four inches in diameter brs. S. 22½ degrees W. 2½ varas; thence N. 60 degrees E. 6990 varas to a stake in the prairie; thence S. 30 degrees E. 3316 vrs. place of beginning."

(2) At the February term, 1890, of the Commissioners Court of Young County that court by order duly entered authorized R. H. Hollingsworth to subdivide the two leagues of land in Baylor County, granted to said Young County for school purposes, into tracts not less than 160 acres each and to sell the same according to the terms specified in the order. In pursuance of the order Hollingsworth subdivided the said two leagues of land into smaller tracts, one of which was designated as subdivision No. 1, which is the land in controversy in this suit.

(3) On August 8, 1891, Hollingsworth sold subdivision No. 1 of the said land to. C. H. Prestridge for $82.00 cash, and the balance

of the purchase money, $738, secured by note due on or before twenty years from date, with interest, payable annually, at the rate of eight percent per annum, principal and interest payable at Graham, Texas. The note provided that in case the interest or principal should not be paid when due the county might at its option rescind the contract and recover possession of the land. Hollingsworth gave to Prestridge a bond for title in the name of Young County, the title to be made on the payment of the note and interest. The bond did not contain the provision authorizing the county to rescind the contract upon default in payment of interest or principal. In the bond the land was described as 205 acres, being subdivision No. 1 of the Young County school land giving metes and bounds. The bond was duly recorded in Baylor County but the note was not recorded. Interest was paid upon the note up to and including the 8th day of August, 1894, since which time no interest has been paid.

(4) On August 9, 1893, C. H. Prestridge and wife, by quitclaim deed, conveyed the land in controversy to M. W. Ayres by the same description that was given in the bond to Prestridge. Ayres assumed the payment of the note to the county. This deed was duly recorded in Baylor County.

(5) On the 15th day of October, 1894, Lizzie A. DeWitt instituted suit in trespass to try title against Ayres in the District Court of Baylor County to recover the 205 acres of land conveyed to him by Prestridge, and which is the land here in controversy. She claimed that the land was a part of the McKinney & Williams survey. She was the owner of the land in the McKinney & Williams survey. Ayres pleaded his title and asked that Young County be made a party defendant to the suit which was done and the county answered by plea of not guilty. The venue of the case was changed to Wichita County and there tried in the District Court before a jury. The issue presented was whether the land was embraced in the grant of two leagues from the State of Texas to Young County for school purposes, which was an older grant than the McKinney & Williams survey. The jury found for defendant, in effect, that the land was within the two leagues granted to Young County, and judgment was entered that plaintiff, Lizzie A. DeWitt, take nothing by her suit and the defendant go hence without day and recover costs. The judgment was not recorded in Baylor County. No appeal was taken. Young County since that time has claimed the land as a part of its school land. Up to the time Young County conveyed the land to Waggoner there was a controversy over that line of the school lands and Young County always claimed the line run by Hollingsworth as the true boundary.

(6) On the 17th day of March, 1905, Ayres, by quitclaim deed, conveyed the land in controversy to Joseph Tinney, the defendant in error. The terms of the trade are unimportant so far as this case is concerned.

(7) On the 4th day of December, 1903, the Commissioners Court of Young County, by an order duly entered, accepted an offer made by W. T. Waggoner to buy the two leagues of land in Baylor County, and said Commissioners Court authorized the county judge to make

a deed to Waggoner for $3.80 per acre. It was directed in the said order that the county judge "ascertain the acreage" of said land and make and deliver a general warranty deed to the said Waggoner upon his compliance with the terms of the order. The county judge executed and delivered to Waggoner a deed for the two leagues of land by the same metes and bounds given in the patent, and it was stated in the deed that the two leagues contained 9693.8 acres of land, "being all of said survey" except a small part which had been recovered from Young County by another party, which did not embrace any of the land in controversy.

(8) The land in suit was not in fact embraced in the metes and bounds given in the patent to Young County, nor in the deed from Young County to Waggoner, but in making the survey of the land for division into smaller tracts Hollingsworth established the southeast corner of the two leagues of school land at a point designated as the beginning corner of the land sold to Prestridge and described in the bond given to him, which embraced the tract now in controversy.

(9) The original and true southeast corner of the Young County school land was situated and located about 2000 varas west and a little south of the point designated in the Prestridge bond for title, which corner, as established by Hollingsworth, was 1100 varas south of the southwest corner of the A. G. McNeil survey as found upon the ground and as called for in the patent. To locate the southeast corner of the Young County survey, as claimed by Waggoner, would give it an excess of acreage, but to locate it "at a more westerly point" would give its correct quantity. If located as claimed by the plaintiff in error and according to Hollingsworth's survey it would conflict with and absorb three other surveys which are older than the school land survey. The trial judge found that in making the survey Hollingsworth made a mistake and took the southeast corner of the Crow survey for the southeast corner of the McNeil survey.

By the judgment rendered in the suit of Lizzie A. DeWitt against Ayres, in which Ayres called upon Young County to defend its title, the legal title to the land was vested in Young County and Ayres continued to hold possession under the bond for title as vendee of the county. The county claimed the land for the school fund which it held in trust, therefore, the judgment established its right as a trustee to that land and the title vested in the school fund, notwithstanding the land was not embraced in the grant originally made for that purpose.

Tinney received the title to the land from Ayres, therefore, he stands in the same relation to the county that Prestridge and Ayres occupied, holding the land subject to the payment of the note given by Prestridge and also subject to the option of the county to rescind the sale in case of failure to pay the interest or principal. If the deed made by the county to Waggoner had the effect to convey that tract of land to him and Young County intended so to convey it, then it rescinded the sale made to Prestridge and vested the superior legal title in Waggoner, if the facts authorized a rescission.

The question upon which this case turns is, did the deed from the county to Waggoner have the effect, as between him and the county, to convey the land in suit? The trial judge found from the evidence that the land in question was not within the boundaries given in the deed to Waggoner and in the patent. That finding is conclusive upon this court. The district judge ignored the intention of the parties and decided the case upon the theory that the conveyance was limited to the metes and bounds given in the deed.

If it was understood between the parties at the time Waggoner bought that this land was a part of the Young County survey, and the county intended to convey it, then the effect of the deed would be to convey to Waggoner the title of the county. This significant language is used in the order by which the county judge was empowered to make the sale: "The county judge shall ascertain the acreage of said land and figure the amount accordingly." In the deed is this recital: "The land conveyed is 9693.8 acres and the same is all of the said Young County school land survey, except that part theretofore recovered from Young County by Gaston J. Ranger." The quantity sold being more than could be included in the field notes, the language, that all of the school land was sold, raises the question whether the reference is to the grant as described in the deed or according to the county's claim. The sale being made by the acre and it appearing that in compliance with the order the county judge "ascertained" the number of acres to be sold to be as stated in the deed, which exceeds by 837 acres the quantity contained in the metes and bounds of the two leagues, the conclusion is reasonable that the county judge in ascertaining the acreage included land not embraced in the field notes, because he could not have "ascertained" an acreage of 9693 acres inside the two leagues, therefore, he must have included in his calculations land in the survey made by Hollingsworth to which the county had for a number of years asserted its claim of title, as a part of the school land of the county. Surely the county could not have expected to receive pay for 9693.8 acres when it was conveying only 8856 acres.

We suggest that Young County would be a proper party to this suit, so that upon another trial the rights of Tinney, the county and Waggoner can be adjusted. The rights of Waggoner and Tinney were each derived from Young County. Whether the county intended to rescind its contract of sale to Prestridge and sell the land to Waggoner is a question of fact to be determined from the deed, construed in the light of the attending circumstances. It is an issue in which Young County is interested.

The judgments of the District Court and Court of Civil Appeals are reversed and the cause remanded.

*Reversed and remanded.*