MORSE'S HEIRS v. WILLIAMS et al.

(Court of Civil Appeals of Texas. El Paso. Nov. 23, 1911. On Rehearing, Jan. 17, 1912.)

1. BOUNDARIES (§ 3*) — CONFLICTING ELEMENTS — CALLS AND DISTANCES — "BACK LINE."

Where a grantor owned land located on the south side of a bayou and conveyed a portion of it by a description beginning at a

---

point on the bayou and extending south a stated number of varas to a stake in the prairie on "back line," the grantee took to the south line of the grantor's land, though it was located at a greater distance from the bayou than indicated by the description.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 30–33, 38–40; Dec. Dig. § 3.*]

2. BOUNDARIES　(§　8*) — CORRESPONDING LINES.

Where the owner of a large grant conveyed the eastern portion thereof, the northeast corner and the east line of the tract conveyed corresponding in calls and distances with the northeast corner and the east line of the grant as described in the patent, it must be assumed that the southeast corner of the tract conveyed also corresponded with the southeast corner of the grant, though the distance call of the west line of the tract conveyed was too short to extend across the grant.

[Ed. Note.—For other cases, see Boundaries, Dec. Dig. § 8.*]

3. BOUNDARIES (§ 9*)—CONSTRUCTION—SEPARATE DEEDS.

Deeds of parts of a grant of land, executed to different persons on the same day, will be construed together in determining the boundary lines.

[Ed. Note.—For other cases, see Boundaries, Dec. Dig. § 9.*]

4. PARTITION (§ 95*) — DECREE — CONSTRUCTION.

In case of repugnancy between a description by metes and bounds of the land vested in the widow by a partition decree and the general language of the decree, the manifest intention of the parties to the instruments upon which decedent's title was founded should be effectuated if it can be reasonably ascertained, and for that purpose the report of the commissioner, the surveyor's map, and field notes accompanying it, should be construed together.

[Ed. Note.—For other cases, see Partition, Dec. Dig. § 95.*]

5. TRESPASS TO TRY TITLE (§ 41*)—ACTIONS —SUFFICIENCY OF EVIDENCE.

Evidence, in trespass to try title by heirs to recover a strip in the south end of a grant of land, *held* to show an intention that the south line of the land awarded to the widow in partition proceedings should extend to the south line of the grant, but that a certain other tract in the grant was not awarded to her.

[Ed. Note.—For other cases, see Trespass to Try Title, Dec. Dig. § 41.*]

6. BOUNDARIES (§ 3*)—METES AND BOUNDS— REFERENCE TO OTHER INSTRUMENTS.

That calls for distances in a deed are insufficient to convey all of a tract of land owned by the grantor will not control, where references in the deed to a partition decree and to the corners of adjoiners make it evident that it was the intention to convey the entire tract.

[Ed. Note.—For other cases, see Boundaries, Dec. Dig. § 3.*]

7. DEEDS (§ 93*)—CONSTRUCTION—INTENT OF PARTIES.

The intent of the parties to a deed, if deducible therefrom, will prevail unless contrary to a rule of law, and, when plainly ascertained, arbitrary rules of construction are not permissible.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 231, 232; Dec. Dig. § 93.*]

8. DEEDS (§ 93*)—CONSTRUCTION—INTENT OF PARTIES.

The intention of the parties to a deed is ascertained by considering all of its provisions,

and when ascertained will not be defeated by ambiguities or inconsistencies therein.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 231, 232; Dec. Dig. § 93.*]

9. PLEADING (§ 36*)—MISTAKE—CONCLUSIVENESS.

An inadvertent error in a pleading will not work an estoppel against the pleader, where his request to make a trial amendment to correct the error should have been granted by the trial court.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 81–86; Dec. Dig. § 36.*]

10. TRESPASS TO TRY TITLE (§ 40*)—ACTIONS —ADMISSION OF EVIDENCE.

In trespass to try title by heirs to recover a strip of land which plaintiffs claimed was not included within the boundaries of a tract set apart to the widow in partition and conveyed by the widow to defendants' grantors, a levy map of the land made and filed in 1896 was not admissible to limit the deed executed by the widow in 1889.

[Ed. Note.—For other cases, see Trespass to Try Title, Dec. Dig. § 40.*]

Error to District Court, Harris County; W. P. Hamblen, Judge.

Action by Morse's Heirs against D. C. Williams and others. Judgment for defendants, and plaintiffs bring error. Affirmed in part, and reversed and remanded in part, for new trial.

Anselm H. Jayne and John G. Tod, for plaintiffs in error. J. A. Gillette, W. W. Searcy, Hutcheson & Hutcheson, Ben Campbell, G. W. Tharp, M. G. Fakes, Byers & Jackson, and Maco & Minor Stewart, for defendants in error.

HIGGINS, J. Action of trespass to try title by plaintiffs in error, as heirs of Agar T. Morse and wife, Grace G. Morse, involving a strip of land in the south end of the Wm. White one-third league of land in Harris county; the said strip being 440 varas wide and 2,180 varas long, the south line thereof being coincident with the south line of the White grant, and the east and west lines being coincident with the east and west lines of said grant. The case was tried before a jury, and at the close of the testimony' a peremptory instruction for defendants was given, upon which verdict and judgment were accordingly rendered.

Limitation was pleaded by the defendants; but the testimony upon that issue, as disclosed by the record before us, is not of such character as would authorize this peremptory instruction, and the correctness of the trial court's action in giving the same must be tested by the condition of the record title.

Agar T. Morse died in 1865, and his widow was appointed and qualified as the administratrix of his estate. The lands owned by him in the White grant passed one-half to the widow and the other one-half to his children. Administration upon the estate was pending in probate court of Harris county, and upon petition of one of the children

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

partition was ordered and commissioners appointed. The commissioners made their report, returning therewith a plat and field notes of the land in Harris county, made by Wm. H. Griffin, surveyor. This plat is as follows:

The inventory of Morse's estate showed "910 acres Wm. White, abstract 573" and "150 or (350) acres Wm. White, abstract 573."

The commissioners set aside to the widow, Grace G. Morse, "the homestead tract and improvements." The tract set aside to Mrs. Morse was described in surveyor's report as follows: "Part of the William White one-third league containing (950) nine hundred

and fifty acres. Beginning at the N. W. corner of said survey and N. E. corner of the Charles Sage survey, on Buffalo bayou; thence south (4,680) four thousand six hundred and eighty varas to a stake in prairie; thence east (1,367) thirteen hundred and sixty-seven varas to a stake in prairie, Campbell's S. W. corner; thence north (2,270) twenty-two hundred and seventy varas to a stake, Parker's S. E. corner; thence west (300) three hundred varas to a stake; thence north (940) nine hundred and forty varas to a stake; thence east (300) three hundred varas to a stake; thence north 280 varas to a stake on Buffalo bayou; and thence up the bayou with its meanders to the place of beginning."

The court's decree vesting title in Mrs. Morse reads: "Whereupon it appearing to the court that said partition was fair, impartial, and just, it was ordered, adjudged, and decreed by the court that said report be received, is hereby approved, and ordered to be recorded. And it is hereby decreed by the court that all the right, title, claim, and interest of the heirs of A. T. Morse in and to the William White one-third league be and the same is hereby divested out of the said heirs and fully vested in Mrs. Morse, the surviving widow, to have and to hold unto herself in her own separate right forever; said one-third of a league consisting of 950 acres: beginning at the N. W. corner of said survey and N. E. corner of the Charles Sage survey on Buffalo bayou; thence south 4,680 varas to a stake in prairie; thence east 1,367 varas to a stake in prairie, Campbell's S. W. corner; thence north 2,270 varas to a stake, Parker's S. E. corner; thence west 300 varas to a stake; thence north 940 varas to a stake; thence east 300 varas to a stake; thence north 280 varas to a stake on Buffalo bayou; thence up the bayou with its meanders to the place of beginning."

The patent to the White grant shows the west line to be 5,120 varas long, whereas the foregoing plat and field notes made by surveyor and the decree of the court called for 4,680 varas as the length of the west line of Mrs. Morse's tract, and it is contended that this left an unpartitioned strip 440 varas wide on south end of what is shown on plat as "Estate of A. T. Morse, Dec'd, 750 acres"; the same being part of the strip involved in controversy.

The east one-half of the White land was owned by Darius Gregg, who, by deed dated May 4, 1849, conveyed to A. McGowen 50 acres. The metes and bounds thereof were described as follows: "50 acres of land in the county of Harris 6 miles W. of the city of Houston on the S. side of Buffalo bayou being part of a tract of land purchased of Wm. White and granted to said White by the republic of Texas, Beg. at a stake 30 varas W. of Thos. McGowen's dwelling

house; thence N. 470 varas to a stake from which a post oak 14 in. in diam. mkd. A bears S. 2 varas dist.; thence E. 300 varas to a pine knot stake on a Bluff bank or a gully 280 varas S. of Buffalo bayou; thence S. 940 varas to a stake in the edge of the timber from which a pine 8 inc. in diam. mkd. M facing E. bears W. dist. 4 varas; thence W. 300 varas to cor. stake in prairie; thence N. 470 varas to cor. stake and place of beg." This tract is shown on the foregoing plat as the W. A. Parker 50 acres.

On March 31, 1849, Gregg conveyed a tract of 370 acres to Geo. Foss, with field notes as follows: "Beginning at a lynn tree for corner 14 in. in diam. mkd. F facing S. on the bank of said bayou; thence S. 280 vrs. to McGowen's N. E. corner on the back of deep ravine, 1,220 varas passed McGowen's S. E. corner, stake in the edge of the timber, from which a pine 8 in. diam. mkd. M bears W. 4 vrs., at 3,462 vrs. to corner, stake in the prairie on back line; thence E. 610 vrs. for corner, stake, the same being Neil Robinson's corner; thence N. with said Robinson's line 2,290 vrs. to edge of timber, marked a post oak 20 in. diam. R facing E., at 3,020 vrs. cross running spring branch, 3,380 vrs. cor., lynn tree 8 in. diam. on the S. bank of Buffalo bayou mkd. R on E. and A on W.; thence up said bayou to the cor. tree and place of beginning, containing 370 acres of land." This is shown on foregoing plat as J. A. Campbell 290 acres, P. H. Raiford 50 acres, and L. S. Arnold 29 acres.

On March 31, 1849, Gregg also conveyed a tract of 150 acres to Neil Robinson; the field notes reading: "Beg. at lynn tree for cor. on the bank of Buffalo bayou 8 in. in diam. mkd. R on E. and A on the W.; thence S. 3,380 vrs. to cor. stake in prairie; thence E. —— vrs. to cor. stake in prairie on Reynolds line; thence N. 3,348 vrs. to cor. sycamore tree 40 in. in diam. mkd. T. A., on the south side of Buffalo bayou 30 vrs. above a spring branch, from which a hickory 7 in. in diam. mkd. L bears south 28° W. 2⁷/₁₀₀ vrs. and a water oak 8 in. in diam. mkd. X bears 1⁷/₁₀ vrs. dist.; thence up Buffalo bayou to the beg." This is shown on plat as W. A. Parker 150 acres.

The foregoing deeds of Gregg did not give the name of the survey in which the lands were situate.

On May 11, 1852, Gregg conveyed to Agar T. Morse "all that tract of land I now own adjoining a 50-acre tract sold to A. McGowen and adjoining the said A. T. Morse on the east and George Foss on the west, lying on the south side of Buffalo bayou, being a part of a tract known as the headright of Wm. M. White about 6 miles above the city of Houston and estimated at 160 acres more or less."

The Neil Robinson tract passed to said Morse on June 13, 1860, by deed from Eleanor Wallis and husband.

The west one-half of the White grant was obtained by Morse from J. C. Massie in 1851.

[1] It is contended by plaintiffs in error that the distance calls of the west lines in the Foss and Robinson tracts did not carry their south lines to the south line of the White grant, and that an intervening strip of land was left, 440 varas wide, which passed to Agar T. Morse by above-mentioned deeds from Gregg and Eleanor Wallis and husband, and which was not set aside to Mrs. Morse in foregoing partition decree.

In Foss deed the southwest corner is described "at 3,462 varas to corner, stake in the prairie, *on back line.*" The words "on back line" cannot reasonably be construed as referring to anything except the back or south line of the grant; the north line being on Buffalo bayou.

[2] The south and east lines of the Robinson tract are as follows: "Thence E. —— vrs. to cor. stake in prairie on Reynolds line; thence N. 3,348 vrs. to cor."—with bearings as above shown. This east line is also the east line of the White grant, and the call for distance of the Robinson east line corresponds with the call in the patent, and it was agreed that this distance call was substantially correct. The northeast corner of the Robinson tract also corresponds with the description given in patent of northeast corner of the grant, and, the east line of the Robinson tract corresponding in these respects with the east line of the grant, it must be held that the southeast corner corresponded also with the southeast corner of the grant. Lincoln v. Waddell, 59 S. W. 613.

[3] For reasons indicated, and considering the descriptions of the Foss and Robinson tracts entirely independent of each other, we think it clear that their south lines extended to and were coincident with the south lines of the grant; but it must be borne in mind that the two tracts were conveyed the same day, and that the southeast corner of the Foss tract calls for the Robinson southwest corner. The description of one, therefore, may be explained or aided by the other, and the conclusion that the south line of the Foss tract is also the south line of the grant is supported by the views expressed regarding the location of the Robinson south line. In same manner the conclusion regarding Robinson south line is supported by the reasons assigned for holding the Foss south line to be similarly located.

By his deed to Morse above described, it is manifest, too, that Gregg understood and intended that the Foss and Robinson tracts should extend to the south line of the White. By this deed he conveyed to Morse a tract bounded on the east by the west line of the Foss. Assuming that there was not a strip south of the Foss, this is an accurate description; but, if there was such a strip, then the description is inaccurate and wholly insufficient to pass the title to the strip.

For reasons indicated, we hold that the

Foss and Robinson tracts extended to the south line of the White grant, and it therefore follows that plaintiff cannot recover any part of the Foss tract. The situation is different regarding that portion of the Robinson tract involved herein, and the rights of plaintiffs therein will be hereinafter adverted to and discussed.

As to the 440-vara strip in south end of tract marked, "Estate of A. T. Morse, Dec'd, 750 acres," defendants claim under Mrs. Grace G. Morse. Plaintiffs in error urge that under the decree of partition the southwest corner of her tract is situate 4,680 varas south of the northwest corner of the grant, and that the tract decreed to her did not extend to the south line of the White. As stated above, the west line of the grant was 5,120 varas in length.

[4] The only evidence of an intention not to include the strip in that portion set aside to Mrs. Morse is the discrepancy noted in the call for distance of her west line. The language of the partition decree is quoted above, and that portion thereof which reads, "and it is hereby decreed by the court that all the right, title, claim, and interest of the heirs of A. T. Morse in and to the William White one-third league be and the same is hereby divested out of the said heirs and fully vested in Mrs. Morse, the surviving widow," is most broad and comprehensive, and, if taken literally, would include not only the strip to the south, but also the Neil Robinson tract on the east marked on plat "W. A. Parker 150." After the language above quoted, the decree then describes the part set aside to Mrs. Morse by metes and bounds, as above quoted. The description by metes and bounds does not include the Robinson or Parker tract; nor will it include the 440-vara strip on the south, if controlling effect be given to the 4,680-vara call. And there is therefore a repugnancy or inconsistency between the description by metes and bounds and the broad and comprehensive language of the decree vesting in Mrs. Morse title to all of the White grant. In such case, the manifest intention of the parties should be given effect if it can be reasonably ascertained from the instruments upon which the title is founded, and to that end the report of the commissioners, surveyor's map, and field notes accompanying the same, should all be considered and construed together. Referring then to the map, we find that the south line of Mrs. Morse's tract coincides with the north line of the Grey grant on the south, clearly and decisively evidencing the intent to carry her south line to the Grey; that the east line of the White was 3,349 varas long, as shown by map, when the patent call and actual distance was 3,348 varas, and this alone, under the authority of Lincoln v. Waddell, supra, would be sufficient to control the erroneous call for distance in the west line. We also find from the field notes of Mrs. Morse's tract that her southeast corner was the southwest corner of the Campbell (Foss) tract, and, as we have seen, this corner was in the south line of the grant.

[5] Therefore, as to the land in the said Morse 750-acre tract, the manifest intention of the parties that Mrs. Morse's south line should extend to the south line of the grant will control the erroneous call for distance of the west line; but it was equally manifest that it was not intended that the Robinson tract shall be vested in her. It is not embraced within the bounds of the land specifically decreed to her. It is noted upon the map as W. A. Parker's land. It was separate and apart from "the homestead tract and improvements" which the commissioners in their report state they set aside to her. And we therefore hold that as to this tract also, the manifest intention of the parties will control, and that title to the Robinson tract was not vested in Mrs. Morse by the partition decree.

[6] It follows, from what has been said, that plaintiffs in error have not shown title to the strip on the south of the 750-acre tract, except as heirs of Mrs. Morse. In that capacity they show title, unless the same passed by deed from Mrs. Morse to W. O. Ellis, dated October 10, 1889, conveying: "All that certain tract or parcel of land lying and being situated in said Harris county out of the Wm. White one-third league and known as Mrs. Morse's interest in said survey containing 700 acres more or less, and described as follows: Beginning at the N. W. corner of said survey and N. E. corner of the Charles Sage survey on Buffalo bayou; thence S. 4,680 varas to a stake in prairie; thence E. 1,367 varas to a stake in the prairie, Campbell's S. W. corner; thence N. 2,-270 varas to Parker's S. E. corner; thence W. 300 varas; thence N. 940 varas; thence W. 300 varas; thence N. 280 varas to a stake on Buffalo bayou; thence up the bayou to the place of beginning as described in the decree of the probate court of Harris county at its January term, 1870, recorded in Book G, pages 678 and 679, of the Probate Minutes of said court to which reference is here made, and this instrument conveys the lands herein described less the following parcels heretofore sold and conveyed by these vendors, to wit: 40⅔ acres to Charles Voss, Sr., July 31, 1874; 53½ acres to Charles J. H. Voss, Jr., April 3, 1876; 100 acres to George W. Morse, January 7, 1880; 11½ acres to W. A. Parker, September 12, 1872; ⅓ of an acre to B. A. Bragg July 3, 1874, reciting where the said deeds are recorded." It will be noted that the error in distance call of west line was carried into this deed, placing southwest corner and the south line 440 varas north of the White south line, presenting the question of whether or not the 440-vara strip passed by the deed.

[7] In considering the effect of a deed, the intent of the parties, when it can be obtained from the instrument, will prevail, unless counteracted by some rule of law, and, when such intent can be plainly ascertained, arbitrary rules of construction are not to be resorted to.

[8] The intention of the parties is to be ascertained by considering all of the provisions of the deed, and, if there be a clause decisively showing the intent, ambiguities and inconsistencies in other portions of the deed will not defeat such intention. Pugh v. Mays, 60 Tex. 193; Waggoner v. Tinney, 102 Tex. 258, 115 S. W. 1155; Devlin on Deeds (2d Ed.) §§ 836, 837.

The intention of Mrs. Morse to convey to the south line of the White grant is clearly and decisively indicated by the comprehensive statement that she was conveying "all that certain tract * * * known as Mrs. Morse's interest in said survey." The south line also calls for the southwest corner of the Campbell (Foss) corner, which, as held above, was in the south line. Reference is also made to the decree of the probate court for description which we have held vested title in her to the south line. She excepts from her conveyance 40⅖ acres conveyed to Voss and 100 acres to Geo. W. Morse. Referring to her deeds for these two tracts we find that the south lines thereof call for the White south line. The deed, construed as a whole, decisively indicates the intent to convey to the south line, and the erroneous call of 4,680 varas must be held to be corrected and thereby controlled. It follows that plaintiffs in error show no title to the strip in the south end of the 750-acre tract.

Recurring now to the strip in the south end of the Robinson tract, shown on plat as W. A. Parker 150 acres: Mrs. Morse conveyed the Robinson tract to B. A. Bragg in 1871, but, as we have shown, title thereto was not vested in her by the decree of partition, and the only interest she had therein was the community one-half. Plaintiffs in error should recover an undivided one-half interest out of the south end of the Robinson tract, unless barred by limitation.

[9] There is no merit in contention that plaintiffs in error are estopped by their pleadings from asserting title thereto. If such was the legal effect of the pleadings, their request for permission to file trial amendment correcting this apparently inadvertent error should have been granted by the trial court.

[10] The fourth assignment of error complains of the exclusion of a map of the Gant subdivision of the levy lands in the 750-acre tract. This map was made and filed for record in 1896. It was properly excluded as irrelevant and immaterial. It could not control or limit the deed from Mrs. Morse to Ellis.

The judgment of the lower court is affirmed in so far as it affects all of the lands in controversy lying west of the tract shown in foregoing plat as W. A. Parker 150 acres, and is affirmed as to all of the defendants in error, except D. C. Williams, A. C. Herndon, and John McCue. As to said D. C. Williams, A. C. Herndon, and John McCue, the judgment is affirmed as to all land claimed by them in controversy herein and which lies west of said W. A. Parker 150-acre tract, and also as to an undivided one-half interest in the land in controversy herein out of said W. A. Parker 150-acre tract, but as to the remaining undivided one-half interest in said Parker tract and as to said Williams, Herndon, and McCue, in respect only to their claim to said remaining one-half interest, the cause is reversed and remanded for new trial.

### On Rehearing.

Motions for rehearing herein have been filed by plaintiffs in error and by defendants in error D. C. Williams, John McCue, and A. C. Herndon, both of which are overruled.

In the motion of the last-named parties, attention is called to expression in our opinion that "plaintiffs in error should recover an undivided one-half interest out of the south end of the Robinson tract, unless barred by limitation," and it is suggested that upon another trial other facts besides limitation may arise which would preclude a recovery. It was not our intention to limit the defense upon retrial to limitation alone, for, if there be facts developed upon retrial raising defenses other than that of limitation, the same should be given proper consideration.