COLQUITT et al. v. EUREKA PRODUC-
ING CO. et al.
No. 1453—6129.

Commission of Appeals of Texas, Section B.
Nov. 1, 1933.

Marshall & King, of Graham, and Hamilton & Hamilton, of Dallas, and Karl F. Griffith, Roy C. Coffee, and Marshall Newcomb, all of Dallas, for plaintiffs in error.

Fred T. Arnold, of Graham, and Conard E. Cooper, of Tulsa, Okl., for defendants in error.

LEDDY, Judge.

This was an action by plaintiffs in error, O. B. Colquitt, and J. N. Graves, against defendants in error, Eureka Producing Company, the Turman Oil Company, their receivers, and others, to recover a certain overriding royalty interest in the gas in and under a certain tract of land situated in Young county, Tex. The interest sought to be recovered was a ⅛, of which O. B. Colquitt claimed to be the owner of a 3/32, and J. N. Graves a 1/32.

Considerable quantities of gas had been produced from the land in controversy by the above-named defendants in error. This gas was bought by the Lone Star Gas Company under a purchasing contract between it and the Eureka Producing Company. The former company held the proceeds of the sale of said gas subject to payment to the rightful owner when such fact should be determined. The plaintiffs in error also sought to recover from the Lone Star Gas Company the value of the gas claimed to be due them by reason of their ownership of the overriding royalty interest in said mineral lease.

The case was tried before a jury. At the conclusion of the evidence it was withdrawn from the jury and submitted to the court by agreement of the parties. Plaintiffs in error were awarded a judgment against defendants in error for the value of ⅛ of the gas produced from said land up to the 1st day of August, 1930, with a foreclosure of a vendor's lien on the leasehold estate under which said gas was produced. Plaintiffs in error's royalty interest in the gas was established as claimed, and they were adjudged to have a lien upon said leasehold estate for all royalties accruing to them in the future as well as for the indebtedness accruing and maturing up to the date of the judgment.

An appeal was duly perfected by the defendants in error. The Court of Civil Appeals reversed the judgment of the trial court and rendered judgment in favor of defendants in error. This writ of error has been granted for the purpose of determining the correctness of that action.

The material facts essential to sustain plaintiffs in error's cause of action seem to be without dispute and are substantially as follows:

Plaintiffs in error and C. F. Colcord owned an oil and gas lease on the land involved. Said lease provided for a royalty of ⅛ of the oil and 1/10 of the gas to the state of Texas. Scott Ferris, who represented what is known as the Haskell interests, consisting of the Eureka Producing Company, the Turman Oil Company, and a number of other corporations, entered into a contract with Colquitt, Graves, and Colcord to purchase said mineral lease. The agreed consideration for the lease was the drilling of a well by the lessee and the payment by him to the lessors of an overriding royalty of ⅔ of all the oil and gas which might be produced from said premises, ⅙ to Colcord, 1/16 to Colquitt and 1/16 to Graves. This contract was reduced to writing in the form of a pencil memorandum. The typist, in copying the contract, through mistake, accident, or oversight omitted the words "and gas" after the words "⅔th of the oil." The assignment of this lease was by the direction of Ferris made to James R. Armstrong. There appears to be no dispute as to the fact that Armstrong did not acquire this lease in his own behalf but as the agent of the Eureka Producing Company.

Mr. Armstrong's testimony did not specifically disclose for whom he was acting in acquiring the lease in controversy. His statement was that in such matter he was acting

as agent "for large corporations." The evidence of Mr. Colquitt and Mr. Ferris, however, discloses the particular interests which he represented in the transaction. The defendants in error introduced no evidence in contradiction thereof. Upon this point, Mr. Colquitt testified:

"We were preparing to develop that section of the lease when Mr. Ferris appeared, and we made preliminary negotiations leading up to the contract with Ferris. He stated to us that he was attorney for and representative of Governor Haskell's interests and the Middle States Oil Corporation.

"I knew that the Haskell interests included the Eureka Producing Company and that it was operating in this territory. Mr. Ferris told me that it was the purpose to have the Eureka Producing Company develop the lease. I knew that there were quite a number of corporations included in the Haskell interests; did not know about the Turman Oil Company, and only know about the Turman Oil Company as a party to the suit and one of the Middle States subsidiary companies. The Middle States Oil Corporation was the principal Haskell interest, the parent corporation."

Mr. Ferris gave the following testimony upon this subject: "I represented Judge Armstrong of the Eureka Producing Company who, in turn, was holding property in trust for the Haskell interests."

Plaintiff in error Colquitt testified to the agreement that the lessors in the sale of the lease to Armstrong were to reserve a ⅖ overriding royalty interest in the gas as well as the oil. Ferris and Armstrong, agents of the defendants in error in the transaction, both frankly admitted that such was the agreement. On this point Mr. Ferris testified as follows: "I made a memorandum of the contract in pencil in a hotel at Graham and later redictated it from the pencil memorandum to a stenographer. I have no recollection of what became of the memorandum, but feel sure it was destroyed. The omission to specify royalty on gas was due to oversight either in dictation or by the stenographer in transcribing her notes. It was an oversight and mutual mistake. It was understood that Colquitt and the Graves people were to have the same royalty in the gas as in the oil. The instrument correctly described the trade as far as I know, except that the words 'and gas' should have been included in the royalty provision."

Mr. Armstrong who acquired this lease on behalf of the defendants in error testified that it was agreed between all the parties that the lessors in said lease were to reserve a ⅖ interest in the oil and gas. His testimony upon this subject is as follows:

"It was the purpose of the parties on both sides to provide for the development of the lease so that the parties of the first part were to receive a percentage of all gross proceeds or income production of either oil or gas, and second party was to receive the remainder of the working interest oil or gas, either or both. The same proportion of income from gas was reserved, or intended to be reserved, by parties of the first part that was reserved on the sale of oil. I do not now remember who drew the contract.

"The omission of the words 'and gas' between the word 'oil' and the words 'produced on said tract' was a typographical oversight. I was very busy at the time and never knew the error occurred until my attention was called to it a long time afterwards and after I had severed my connection with the business."

On the 2d day of August, 1921, Armstrong transferred and assigned said mineral lease to the defendant in error Eureka Producing Company. The granting clause of said assignment reads as follows: "do sell, transfer, convey and assign unto the said Eureka Producing Company, all and singular, my oil and gas lease and leasehold estate, right, title and interest in and to the following described tract of land, situated in Young County, State of Texas *which is an undivided five-eighths (⅝th) interest therein*."

The assignment contained this further recital: "Subsequently, and or about April 21st, 1921, the said J. N. Graves, O. B. Colquitt and C. F. Colcord, assigned said oil and gas lease to Jas. R. Armstrong, *reserving a two-eighths (²⁄₈th) interest therein*."

By subsequent conveyance Colquitt acquired Colcord's 1/16 interest in the lease, making his interest 3/16 and Graves 1/16. Later these parties in order to obtain the drilling of an additional well by defendants in error, released a ½ interest in their royalty thereby reducing Colquitt's interest to a 3/32 and Graves to a 1/32 interest therein.

Plaintiffs in error contend that Armstrong's assignment of this lease to the Eureka Producing Company evinces a clear intention upon his part to convey only a ⅝ interest in the gas in and under said premises.

It is defendants in error's view that inasmuch as the granting clause of the assignment of said mineral lease purports to convey all the right, title, and interest Armstrong held therein, the subsequent language "which is an undivided 5/8ths interest" constitutes an exception which is repugnant to the grant and therefore void.

There would be much force in this contention if there were no other language in the instrument or circumstances surrounding its execution tending to throw light upon the intention of the parties in this respect. But it is specially recited in the assignment by Armstrong that in the instrument by which he acquired title to this lease

there was reserved to Colquitt, Graves, and Colcord a ⅖ *interest therein.*

■ The several parts of this instrument should be construed together in an effort to interpret the same in such a way as to carry into effect the true intent of the parties in preference to a construction which would obviously defeat such intention. McMahan v. McMahan (Tex. Civ. App.) 198 S. W. 354.

■ The intention of the parties to this transaction, if fairly ascertainable from a consideration of the entire instrument, will not be permitted to be defeated by ambiguities or inconsistencies therein, nor will such plainly ascertainable intention be allowed to be overridden by arbitrary rules of construction. Morse v. Williams (Tex. Civ. App.) 142 S. W. 1186.

■ If the language of this instrument is fairly susceptible of more than one interpretation, it is the duty of a court in determining the true intent of the parties to consider the surrounding circumstances existing when the deed was executed, Lipscomb v. Fuqua, 103 Tex. 585, 131 S. W. 1061: Ryan v. Kent (Tex. Com. App.) 36 S.W.(2d) 1007, and this regardless of whether the language used be ambiguous, Ryan v. Kent, supra. The consideration of such extraneous evidence is not to vary or contradict the terms of the instrument but to aid the court in arriving at the true intention of the parties. Reed v. Ins. Co., 95 U. S. 23, 24 L. Ed. 348; French v. Carhart, 1 N. Y. 102; Bradley v. Washington Alex. & George S. P. Co., 13 Pet. 89, 10 L. Ed. 72; Borden v. Patterson, 51 Tex. Civ. App. 173, 111 S. W. 182.

■ When all of the provisions of the assignment of the lease executed by Armstrong to the Eureka Producing Company are considered in the light of the surrounding circumstances existing at the time of the execution thereof, the intention of the grantors to convey to the grantee only a ⅝ interest in the gas becomes clear and unmistakable. It is an undisputed fact that Armstrong intended to acquire and thought that he had acquired but a ⅝ interest in the gas under his assignment from Graves, Colquitt, and Colcord. He was laboring under this belief when he assigned the lease to his principal, the Eureka Producing Company. In fact, he continued under such impression for several years. He first learned to the contrary some time during the year 1928. In the very instrument by which he conveyed the lease to his company, he solemnly recited that the assignment by which he had acquired the same reserved a ⅖ interest in the lease to plaintiffs in error, which of course would include the gas as well as the oil.

When all of the provisions of the assignment made by Armstrong are considered in connection with the circumstance that he believed at the time he executed said instrument that he had acquired but a ⅝ interest in the gas under his assignment from plaintiffs in error, it conclusively appears that he intended to convey to his principal, the Eureka Producing Company, only the interest which he thought he had acquired, that is, a ⅝ interest in said lease. Since this is true, arbitrary rules of construction will not be allowed to defeat the plainly ascertained intention of the grantor.

On the 12th day of July, 1929, Armstrong, in recognition of his obligation to defendants in error Colquitt and Graves, because of the mistake aforesaid, reconveyed to them the ⅖ interest in the gas. At that time it appears that Colquitt had acquired the overriding royalty interest theretofore owned by Colcord. This conveyance therefore operated to vest in Colquitt and Graves the ⅖ interest in the gas which through mistake of all the parties had theretofore been conveyed to Armstrong.

■■ Defendants in error pleaded the four-year statute of limitation (Rev. St. 1925, art. 5529) as a bar to plaintiffs in error's right to recover the royalty interest in the gas, and they now insist that the undisputed evidence discloses that such cause of action was barred under said statute.

The four-year statute cannot be invoked as a bar to the cause of action set forth by plaintiffs in error to recover the royalty interest, as such an action is one to recover an interest in land. It has been repeatedly held by the courts of this state that an oil and gas lease conveys an interest in land. The purchaser of such a lease acquires a determinable fee to the minerals in place. Stephens County v. Mid-Kansas Oil & Gas Co.. 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566; Corsicana Petroleum Company v. Owens, 110 Tex. 568, 222 S. W. 154; Hager v. Stakes, 116 Tex. 453, 294 S. W. 835; Martin v. Diall (Tex. Com. App.) 57 S.W.(2d) 75.

■ In their petition plaintiffs in error pleaded specially all the facts constituting their title to the royalty interest in the gas. In addition to the specific relief of reformation and foreclosure of the vendor's lien prayed for, there was a prayer for such equitable relief as they might be entitled to under all the facts. The petition clearly set forth, and the undisputed evidence sustained, a cause of action in favor of plaintiffs in error to recover an interest in land, independent of any right of reformation based upon mutual mistake. If, as we have held, Armstrong's conveyance to the Eureka Producing Company did not operate to convey but ⅝ interest in the gas, then his reconveyance of ⅖ interest vested title thereto in his grantees. It was not essential that plaintiffs in error's assignment of said mineral lease be reformed in order to entitle them to recover the royalty interest sued for.

■ The fact that plaintiffs in error specially pleaded their title did not change the char-

acter of the suit. It was as much an action for the recovery of an interest in land as if it had been in the ordinary form of trespass to try title. Stafford v. Stafford, 96 Tex. 106, 70 S. W. 75.

Defendants in error insist that since they expended large sums of money in developing said land for gas before plaintiffs in error made any claim of ownership to any part of such gas, the latter should be estopped from asserting ownership to any interest therein. There is no merit in this contention. At the time defendants in error began developing said land for the production of gas, they were legally chargeable, through their agent, Armstrong, with notice of the fact that they had not acquired the ⅔ royalty interest in the gas. The delay of plaintiffs in error in asserting their claim to the gas could not under the circumstances have misled or otherwise operated to the injury of defendants in error; hence there is no basis for the invocation of an estoppel.

We conclude that defendants in error's assignment urged in the Court of Civil Appeals to the effect that the trial court erred in establishing and foreclosing a vendor's lien upon the leasehold estate should be sustained. There is no evidence to support such a judgment. Under the undisputed facts, however, plaintiffs in error were entitled to recover their overriding royalty interest in the gas. It therefore becomes necessary to reverse the judgment of the Court of Civil Appeals and to modify the judgment of the trial court so as to eliminate that portion foreclosing the vendor's lien and in lieu thereof to award plaintiffs in error a recovery of a ⅛ overriding royalty interest in the gas under said lease in the proportion of 1/32 to Graves and 3/32 to Colquitt. The judgment awarding plaintiffs in error a recovery for the value of the gas produced from the premises will not be disturbed.

We therefore recommend that the judgment of the Court of Civil Appeals be reversed, the judgment of the trial court modified as above indicated, and as modified that the same be affirmed.

CURETON, Chief Justice.

The judgment of the Court of Civil Appeals is reversed, and that of the district court is reformed, and as reformed is affirmed, as recommended by the Commission of Appeals.