# OCTOBER, 1942

Lᴏɴᴇ Sᴛᴀʀ Gᴀs Cᴏᴍᴘᴀɴʏ ᴠ. X-Rᴀʏ Gᴀs Cᴏᴍᴘᴀɴʏ ᴇᴛ ᴀʟ.

No. 7790. Decided April 15, 1942.
Rehearing overruled October 7, 1942.
(164 S. W., 2d Series, 504.)

*Roy C. Coffee, Marshall Newcomb, Warren J. Collins,* and *E. H. Selecman,* all of Dallas, *Conner & Conner,* and *Earl Conner, Sr.,* all of Eastland, *Powell, Rauhut & Gideon,* of Austin, for plaintiff in error Lone Star Gas Co.

It was error for the Court of Civil Appeals to hold that the contract in question obligated defendants to receive continuously the full allowable production from the well on the contract premises and that defendant having failed to so receive the gas, had breached its contractual obligation. Southwest Pipe Line Co. v. Empire Natural Gas Co., 33 Fed. 248, 64 A. L. R. 1229; Texas Emp. Ins. Assn. v. Wright, 128 Texas 242, 97 S. W. (2d) 898; E. H. Perry & Co. v. Langbehn, 113 Texas 72, 252 S. W. 472.

*Levy & Evans* and *Warner Evans,* of Fort Worth, *Turner, Seaberry & Springer,* of Eastland, for defendants in error.

The gas purchase contract is an executed contract of sale which conveyed to appellee an interest in realty and is not to be treated as an executory contract for the sale of gas at the mouth of the well, as personalty as held by the trial court. Stone v. Marshall Oil Co., 188 Pa. 602, 41 Atl. 749; Texas Co. v. Daugherty, 107 Texas 234, 176 S. W. 717; Sheffield v. Hogg, 124 Texas 290, 77 S. W. (2d) 1021.

MR. JUSTICE SHARP delivered the opinion of the Court.

This appeal involves the construction of a gas purchase contract, entered into by and between the owners of an oil and gas lease and the Lone Star Gas Company, wherein the Gas Company agreed to purchase the gas to be produced from 290 acres of land situated in Erath County.

The X-Ray Gas Company, O. D. Dillingham, G. A. Clements, leaseholders, and W. T. Fulfer and E. D. Garner, lessors, brought this suit against the Lone Star Gas Company to recover the value of unproduced natural gas which plaintiffs alleged defendant was required to receive and pay for under a gas purchase contract which is the subject matter of this suit. In a nonjury trial judgment was entered that plaintiffs take nothing by their suit. On appeal the Court of Civil Appeals reversed the judgment of the trial court, and remanded the case to the district court for a new trial. 139 S. W. (2d) 142. A writ of error was granted.

The parties will be referred to herein as they were designated in the trial court, the X-Ray Gas Company et al as plaintiffs, and the Lone Star Gas Company as defendant.

Plaintiffs W. T. Fulfer and E. G. Garner own the 290 acres of land here involved. On January 29, 1929, they executed an oil and gas lease to G. A. White and W. F. Snebold. Lessees organized the X-Ray Gas Company, acquired a majority of its capital stock, and on May 14, 1929, assigned to the corporation all their interest in the oil and gas lease. They continued to own the majority stock and to manage the corporation until they sold their stock to plaintiffs Dillingham and Clements in April, 1935. Snebold and White drilled a well, which was productive of natural gas. This is the only well that had been drilled on the land up to the date of trial.

On April 17, 1929, the gas purchase contract, the subject matter of this suit, was entered into between Snebold and White, as vendor, and the Lone Star Gas Company, as vendee. Hoffman and Page, to whom Snebold and White had previously conveyed a 1/16 interest in the leasehold estate, ratified and confirmed the contract by written instrument dated August 25, 1929. Immediately upon the completion of the well, defendant connected its pipe line thereto, and has since continued to receive gas therefrom. The quantities of gas received by it varied from month to month, but at no time did it receive continuously the full allowable production; which fact was known to vendor. It was defendant's custom not to receive the full allowable production of gas from any of the numerous wells to which its pipe lines were connected, but to apportion its gas requirements among the wells in the various fields from which it obtained its gas supply, on the gasis of potential capacity and the ability of the wells to produce. At all times subsequent to April 17, 1929, the date of the purchase contract, the supply of gas taken from the X-Ray field was apportioned among the wells in that field according to their open flow, and with consideration given to the rock pressure and other relevant factors. Defendant's plan of proration was discussed with Snebold and White on numerous occasions. The parties operated under the gas purchase contract without dissention or claim by vendor, until Hoffman and Page sold their interest in the oil and gas lease and the gas purchase contract to plaintiff G. A. Clements on February 28, 1935, and Snebold and White sold their stock in the X-Ray Corporation to plaintiffs G. A.

Clements and O. D. Dillingham in April, 1935, a period of six years. This suit was filed in May, 1935.

The pertinent portions of the gas purchase contract are as follows:

The vendor (Snebold and White) "agrees to sell and deliver at the mouth of the wells, to Vendee (Lone Star Gas Company), and the Vendee agrees to receive, *in the usual conduct of its business,* all of the merchantable gas, in its natural state, including all hydrocarbons therein contained, as produced, from all the wells now drilled, and which may hereafter be drilled" in the 290 acres during the term of the mineral lease. Vendor "shall not be required to take gas except when delivered in commercial quantities, free from water or other fluid substances, and at pressures sufficient to enter its lines against varied working pressure therein, not to connect with unprofitable wells, nor to continue connection with any well after it becomes unprofitable to vendee; but Vendee will endeavor, so far as operating conditions will permit, to apportion gas taken from this field on basis of capacity and rock pressure of wells, and to protect the interests of the Vendor against draining through offset wells. * * * This contract is subject to all present and future valid orders, rules and regulations of any regulatory body of the state in which these premises are situated."

Hoffman and Page also become "Vendor" under this contract by virtue of their written ratification thereof.

Plaintiffs contend that under the terms of the contract defendant was obligated to accept delivery of and to pay for all the merchantable gas which the well was capable of producing, subject only to the restrictions of the Railroad Commission; or, in the alternative, it was under the obligation to receive and pay for such quantities of gas as could be produced by the well and received by defendant in the exercise of reasonable diligence, and that if defendant had exercised such reasonable diligence it would have received the full allowable production from the well continuously, and in the amount claimed in their first theory of recovery.

Defendant answered that its market for gas is uncertain, and varies from time to time, depending upon the demands of its consumers, consisting of approximately 300 cities and towns, whose needs in turn depend upon economic conditions, weather conditions, and the availability and price of competing fuels,

to receive in the usual conduct of its business; that prior to and at the date of the contract, defendant had in effect and conformed to a plan of proration whereunder it apportioned its market demands among the various wells to which its pipe line facilities were connected, and from which it obtained its supply of gas; that the contract was made with reference to the peculiarities of defendant's business, which were well known to vendor; and that the vendor ratified and confirmed defendant's operations with respect to the contract as being in conformity therewith, and adopted the construction placed placed thereon by defendant.

G. A. White, former president of the X-Ray Gas Company before this suit was brought, testified that he was familiar with the nature of defendant's business prior to the time the contract was executed; that he did not understand that defendant would take any specific amount of gas from the well each day or week, or month or year, but that the gas received would be prorated and would vary from time to time, depending on defendant's market demands; and that he never made any complaint that defendant had breached its contract.

W. F. Snebold, one of the original vendors, testified that when the contract was made he knew that the amount of gas which defendant would take thereunder would vary from time to time, and that there would not be any constant rate of delivery from the well.

Karl F. Page, of Hoffman & Page, testified that he was familiar with defendant's business at the time he ratified the contract, and understood that defendant had the right to purchase gas in the normal conduct of its business, and that it would not take any specified amount of gas from day to day; that he knew that the amount of gas to be taken from the well would depend upon the season and market demands of defendant, and that there would be a variation in the amount of gas taken from time to time.

The trial court found that the original vendors in the gas purchase contract were generally familiar with the nature of the business of defendant, the manner of conducting it, and the markets to which defendant transported the gas which it purchased and produced; that owing to variations in the demands of consumers supplied by defendant, the amount of gas which it is able to purchase varies from time to time, and demands

upon it for gas are largely influenced by temperature and economic conditions prevailing in the territory served by it and the price and availability of competing fuels; that in the ordinary course of its business defendant has an established policy of connecting to all gas wells in the field which its lines penetrated, and of purchasing gas from the well owners indiscriminately; and that all these facts, circumstances, and conditions existed at the date of the contract, and were generally known to the parties executing the contract, and those conditions have existed at all times subsequent thereto; that at the time the contract was executed the original vendors knew that the gas would be taken under the contract in the usual conduct of defendant's business, and that the quantities taken would vary from time to time; that since the contract was executed defendant has taken gas from plaintiffs' well in varying quantities, but that the amount taken has conformed generally to a plan of proration formulated and used by defendant in prorating its total demands for gas among the various fields from which it procures its gas supply, which plan was discussed with the original vendors at different times, and they were fully aware of its application to their well; that the parties to the contract operated thereunder without complaint, from the date of its execution down to the date this suit was filed, and without any claim on their part that the vendee was failing to perform its obligation under the contract, or was failing to take the quantities of gas which it was required to take in the usual conduct of its business.

The court further bound, in substance, that the defendant has taken gas under the contract, and has operated thereunder in a reasonable manner, and that the defendant, in operating under the contract, exercised that degree of diligence which a person of ordinary prudence would exercise, taking into consideration the contract as a whole, the nature of defendant's business, and its operations in the usual conduct thereof.

In its conclusions of law the trial court held that the original parties to the contract had acted upon and under it in such manner that they had placed a practical construction upon it in conformity with defendant's acts and conduct, and that this construction did no violence to the terms and provisions of the written instrument, but was in conformity therewith. The trial court also concluded that plaintiffs failed to establish any legal ground for recovery.

We recognize the general rule that if the meaning of a contract is plain, the acts of the parties cannot prove an interpretation contrary to the plain meaning; and such rule will be applied when it is proper to do so.

The vendor in this contract agreed to sell and deliver to the vendee, and the vendee agreed to receive and pay for, certain gas "in the usual conduct of its business." The contract also contained many other provisions. For six years the parties construed such contract to mean certain things, and operations during that period of time were carried on pursuant to such construction. Different parties later acquired ownership of the stock of the corporation originally holding the contract, and these parties construed the contract differently. Hence this lawsuit.

The controlling question presented here is whether the trial court, under all the facts and circumstances surrounding the execution of the contract under consideration, and its interpretation by the parties, erred in construing the contract as it did. The contract should be considered as a whole, in order to give effect to its general purpose and the true intention of the parties. If the intention of the parties who executed this contract can be fairly ascertained from a consideration of the entire instrument, such intention will not be permitted to be defeated by ambiguities or inconsistencies therein. Colquitt v. Eureka Producing Co. (Com. App.), 63 S. W. (2d) 1018; McMahan v. McMahan, (Civ. App.), 198 S. W. 354; Morse's Heirs v. Williams (Civ. App.), 142 S. W. 1186. If the language used in this contract is fairly susceptible of more than one interpretation, it is the duty of a court, in ascertaining the true intention of the parties to consider the subject matter of the contract and the surrounding circumstances existing when such contract was executed. Colquitt v. Eureka Producing Co., supra; Lipscomb v. Fuqua, 103 Texas 585, 131 S. W. 1061; Ryan v. Kent (Com. App.), 36 S. W. (2d) 1007. The application of this rule is not to vary or contradict the terms of a contract, but is to aid the court in ascertaining the true intention of the parties expressed in such contract as they understood same. Colquitt v. Eureka Producing Co., supra; Ryan v. Kent, supra; Gulf Production Co. v. Spear, 125 Texas 530, 84 S. W. (2d) 452; Reed v. Insurance Co., 95 U. S. 23, 24 L. Ed. 348; French v. Carhart, 1 N. Y. 96, 102; Bradley v. Washington, Alexandria & Georgetown S. P. Co., 13 Pet. 89, 10 L. Ed. 72; Borden v. Patterson, 51 Texas Civ. App. 173, 111 S. W. 182.

■ The original parties to the contract, and also the trial court, construed such contract as contended for by defendant; while the Court of Civil Appeals, with considerable difficulty, construed it as contended for by plaintiffs. If there is any doubt as to the meaning of a contract like the one before us, the courts may consider the interpretation placed upon it by the parties themselves. In this instance the acts of the parties themselves indicated the construction they mutually placed upon the contract at the time, including the acts done in its performance, and same is entitled to great if not controlling weight. Courts will generally follow the interpretation of the parties to a doubtful contract. The practical construction placed upon a contract by the parties themselves constitutes the highest evidence of their intention that whatever was done by them in the performance of the contract was done under its terms as they understood and intended same should be done. Galveston, H. & S. A. R. R. Co. v. Johnson, 74 Texas 256, 11 S. W. 1113; E. H. Perry & Co. v. Langbehn, 113 Texas 72, 252 S. W. 472; San Antonio St. Ry. Co. v. Adams, 87 Texas 125, 26 S. W. 1040; Rio Bravo Oil Co. v. Weed, 121 Texas 427, 50 S. W. (2d) 1080, 85 A. L. R. 391; Neblett v. Armstrong (Com. App.), 26 S. W. (2d) 166, 75 A. L. R. 577; Cooley v. Buie (Com. App.), 291 S. W. 876; 10 Tex. Jur., p. 298, sec. 171; 17 C. J. S., p. 755, sec. 325; 12 Amer. Jur., p. 787, sec. 249.

■ When it is considered that this contract obligates the defendant to purchase or receive only "in the usual conduct of its business," and when it is further considered that this contract contains the provision that "the vendee will endeavor, so far as operating conditions will permit, to apportion gas taken from this field on the basis of capacity and rock pressure of wells," besides other provisions, we think the trial court properly heard evidence in order to enable it to ascertain the true intention of the parties. This is so because when the entire contract is considered in the light of all the surrounding facts and circumstances existing when same was executed, it can not, on its face, be construed as an unconditional obligation on the part of defendant to take and pay for all the merchantable gas that this well was or is capable of producing.

Therefore the judgment of the Court of Civil Appeals is reversed, and the judgment of the trial court is affirmed.

Opinion delivered April 15, 1942.

Rehearing overruled October 7, 1942.