## MILLER v. HORN et al.

(Court of Civil Appeals of Texas. Amarillo. June 22, 1912.)

1. VENDOR AND PURCHASER (§ 98*)—VENDOR'S REMEDIES—RESCISSION.

Upon default by the vendee in an executory contract for the sale of lands, the vendor may elect to rescind the sale and repossess himself of the title and possession without refunding any portion of the purchase price that may have been paid unless the principles of equity require such a refund.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 163–165; Dec. Dig. § 98.*]

2. VENDOR AND PURCHASER (§§ 86, 101, 102*) —VENDOR'S REMEDIES—RESCISSION.

A grantee of land under an executory conveyance, who was a nonresident, took no steps toward the payment of the vendor's lien notes and asserted no claim to the lands to the knowledge of the grantor, although he did assign his interest with other property for the benefit of his creditors, and the assignee, creditors, and those claiming under the grantee made no claim to the lands and no offer to pay the purchase price until about twenty years after the conveyance. About six years after the maturity of the notes, the grantor brought a suit to recover the title and possession, alleging that the grantee's residence was unknown to him, and a citation to the grantee was issued and served by publication. The grantee, however, had died previous to the filing of such suit. *Held*, that the grantee had abandoned his rights under the conveyance, justifying a rescission by the grantor, that the suit, although not binding on those claiming under the grantee because they were not parties, was sufficient to show a rescission, and that the grantor's ignorance of the grantee's residence excused the giving of notice of the rescission.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 144–146, 170–174, 175–177; Dec. Dig. §§ 86, 101, 102.*]

3. VENDOR AND PURCHASER (§ 100*)—VENDOR'S REMEDIES — RIGHT TO RESCIND — WAIVER.

Where a grantee under an executory conveyance was a nonresident and his residence was unknown to the grantor, a delay by the grantor for about six years after the maturity of his vendor's lien notes before electing to rescind was not a waiver of his right to rescind.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 170; Dec. Dig. § 100.*]

4. VENDOR AND PURCHASER (§ 95*)—VENDOR'S REMEDIES — RIGHT TO RESCIND — WAIVER.

One of two grantors under an executory contract transferred his interest in the vendor's lien notes and in the land to the other, and about 20 years afterwards made a second conveyance of his interest in the notes and land to those claiming under the other grantor as confirmatory of the first transfer. *Held* that, assuming that his acts were binding on those claiming under the other grantor, this second conveyance was not a ratification of the executory contract of sale so as to effect a previous rescission of that contract by the other grantor.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 158–160; Dec. Dig. § 95.*]

Appeal from District Court, Potter County; J. N. Browning, Judge.

Action by Louisa W. Miller against Mary

P. Horn and others. From the judgment, plaintiff appeals. Affirmed.

Crudgington & Umphres, of Amarillo, for appellant. Hendricks & Boyce, of Amarillo, for appellees.

GRAHAM, C. J. This appeal is from a judgment rendered by the district court of Potter county, on August 16, 1911; the case having been tried before the court without the intervention of a jury and no findings of fact or conclusions of law filed by the trial court.

The record shows: That some time prior to July 12, 1910, Louisa W. Miller filed this suit against the appellees herein, and that on July 12, 1910, the appellees filed in said cause their original answer. That thereafter Louisa W. Miller died, and the appellants herein, as heirs of Louisa W. Miller and her deceased husband, D. R. Miller, intervened as parties plaintiff and on August 14, 1911, filed a pleading on which the cause was tried, said pleading consisting of two counts, one being an ordinary action of trespass to try title, in which allegation was made that they were informed that the appellees' claim was based upon two certain vendors' lien notes, dated May 1, 1890, executed by D. R. Miller, and which were given as part payment for the purchase of the land sued for. The second count of which pleading being in the nature of a plea for specific performance of the contract for the sale of lands out of which the notes mentioned grew, in which latter plea appellants, while not admitting the binding force of the notes mentioned, or that appellants were not the owners of the legal title to the land, sought, in the event the notes were found to be unpaid, and a valid lien on the land, to pay off and discharge the same and have title decreed to them, alleging that they had succeeded to the rights of the grantee in the conveyance out of which the notes grew. By a first amended answer, appellees pleaded a general demurrer, special exceptions, limitations, a former judgment divesting the ancestors of appellants of all right and title to the land and vesting the same in those under whom appellees claim and which was rendered more than four years before the filing of this suit, stale demands, as against the effort of appellees to now pay off the notes and acquire title to the land, a general denial, and a specific allegation, setting up the fact that all such rights or claims as appellants or those under whom they claim, ever had in or to the land, grew out of an executory contract of sale of the lands, made by H. B. Sanborn and J. T. Holland in the year 1890, the execution and delivery of certain vendors' lien notes as a part of the consideration for said sale, the abandonment of said contract of sale by appellants and those under whom they claim, and an election by appellees and

those under whom they claim to repudiate the contract of sale as a result of said abandonment by appellees and those under whom they claim, and a repossession by appellants and those under whom they claim of the title and possession of the land in controversy, and a prayer to do equity by refunding to appellants the portion of the purchase money paid .by them and those under whom they claim, in the event the principles of equity so require and a prayer for the title and possession of the land.

The record shows: That prior to May 7, 1890, lots 4 and 5 in block 92, of the town of Amarillo, being the property in controversy, was owned by H. B. Sanborn and J. T. Holland, and that on that day said H. B. Sanborn and J. T. Holland, by an executory contract or deed of conveyance in writing, conveyed said property to one D. R. Miller for a total consideration of $125, one-third of which was paid in cash, and the remaining two-thirds of the purchase price was evidenced by two vendors' lien notes in equal sums, due in one and two years after their dates, respectively, the notes on their faces showing that they were given as a part of the purchase price for the lands and expressly stating that a vendor's lien was retained to secure their payment, and the deed also stating on its face, "Vendor's lien is hereby acknowledged in said notes." That on December 18, 1891, said D. R. Miller, joined by his wife, L. W. Miller, executed and delivered a general deed of assignment for the benefit of his creditors, covering the land in controversy to Leslie A. Codding, as assignee, said last-named instrument having been executed and delivered in the state of Minnesota, where said Daniel R. Miller appears at that time to have been engaged in business. That thereafter, on June 6, 1910, an instrument purporting to have been executed by the heirs of D. R. Miller and also by the heirs and legal representatives of Leslie A. Codding (the instrument on its face alleging that both said Miller and said Codding were then deceased), whereby all the interest of the grantors in the property in controversy was conveyed to Louisa W. Miller.

The record also shows that in 1907 the appellants and those acting for them had paid state and county taxes on the property in controversy for the years 1901, 1903, 1904, and 1905, and that in 1908 taxes were also paid on said property by or for appellants to the city of Amarillo, and the independent school district located in Amarillo for the year 1907; that said parties also paid state and county taxes on said property for the year 1906; also, that in 1907 said parties paid city taxes on said property to the city of Amarillo for the years 1899, 1901, and 1902; that said parties in the year 1907 also paid city taxes to the city of Amarillo on said property for the years 1903, 1904,

and 1905; that in 1907 they also paid city taxes on said property for the year 1906. The record also shows that at the time of the trial the appellees, except B. T. Ware and J. H. Wills, who were made parties to the suit as executors of the estate of J. T. Holland, were the owners of all the rights of said J. T. Holland, deceased, and were entitled to his estate both by inheritance and by will, and that on June 30, 1910, H. B. Sanborn, by an instrument in writing, duly executed by him, had conveyed to the appellees, and those under whom they claim, all rights and interest formerly owned by him in the lands in controversy as well as in the vendors' lien notes hereinbefore mentioned. The record also shows: That on April 22, 1898, H. B. Sanborn and J. T. Holland, as plaintiffs, filed a suit in the district court of Potter county, Tex., against D. R. Miller, the grantee in the deed of date May 7, 1890, for the title and possession of the lands in controversy, alleging in the face of the petition the execution and delivery of the deed of date May 7, 1890, the execution and delivery of the vendor's lien notes above mentioned as part of the consideration for said conveyance, alleged a failure to pay off and satisfy said notes or any part thereof, and prayed for title and possession of the lands. That at the same time said petition was filed, a paper under oath was filed in said cause, alleging that the residence of D. R. Miller, the defendant therein, was unknown, and on this paper a citation was issued in said cause, which was duly served by publication for the length of time and as required by law in such cases. The record also shows that, in said cause last mentioned, special counsel was appointed by the court to represent the defendant therein, and that on trial of said cause, on December 6, 1898, judgment was rendered divesting D. R. Miller of all right or title in said lands and vesting same in H. B. Sanborn and J. T. Holland. The record also shows, however, that at the time the last-mentioned suit was filed D. R. Miller was dead, and his heirs and legal representatives were not made parties thereto, nor were they in any way served in said cause.

The record further shows that at the time of the conveyance from Sanborn and Holland to Miller on May 7, 1890, as well as at all times since, D. R. Miller, during his lifetime, and his heirs and legal representatives since, were and have been nonresidents of the state of Texas, and that from the time of maturity of the notes mentioned until shortly before the filing of this suit, neither H. B. Sanborn, J. T. Holland, nor the appellants herein knew or by the exercise of ordinary diligence could ascertain the whereabouts of said D. R. Miller during his lifetime or of his heirs or legal representatives since, though reasonable efforts were made by said Sanborn and Hol-

land from about the time the notes mentioned matured until the suit was filed by them against Miller in 1898. The record also shows that at the time of the conveyance in 1890 the property in controversy was reasonably worth about $125; that at the time the notes mentioned matured the property had depreciated in value until it was not worth more than, if as much as, the balance then due on the notes, and this condition continued for some years; that a reaction set in in the value of the property about 1901 or 1902, from which time it continued to increase in value until in 1907, the property in controversy was worth about $1,500 or $2,000, and that was its value at the time the suit was filed and at the time of the final trial. The record shows that the property in controversy is unimproved and has never been in the actual possession of any person, except that same was inclosed at the instance of appellees and those under whom they claim about the year 1909 or 1910. The record shows that appellants first learned of any claim or right they might have had in the property about the year 1907, and that neither they nor those under whom they claim ever offered or proposed to pay any part of the purchase-money notes until they made a proffer or tender so to do in the pleading filed in this cause on August 14, 1911.

On the trial of the cause below the trial court rendered judgment for appellees for the title and possession of the land as against all the appellants and adjudged that appellees should repay 'to appellants the portion of the purchase price of the lands that had been paid by D. R. Miller as a part consideration for the conveyance of May 7, 1890, with interest thereon, adjudged an equitable lien against the lands in the hands of appellees to secure the payment of that sum, and foreclosed the same, from which judgment the appellants have appealed to this court and assign the errors discussed below.

Under appellants' first assignment, contention is made that the trial court erred in rendering judgment for appellees and against appellants, on the grounds that, if appellants were not the owners of the legal title, they were the owners of the equitable title to the land by virtue of the excutory contract of sale from Sanborn and Holland to D. R. Miller, and that appellants were offering to perform fully that contract. The proposition asserted thereunder being in substance that the appellees, by tendering the purchase money due under the executory contract of sale, had a right to complete their title, no matter how long the vendee in said sale had been in default.

[1] As we understand the law, the vendor in an executory contract for sale of lands may, upon default being made by the vendee, elect to rescind the sale and re-possess himself of the title and possession of the lands without refunding any portion of the purchase price that may have been paid, unless the principles of equity would require that he refund.

[2] The record in this case shows that D. R. Miller, the grantee in the executory conveyance, died in a foreign state, in January, 1898, nearly six years after the maturity of the last of the vendor's lien notes which had been executed by him as a part of the consideration for the executory conveyance, under which he claimed the lands, and that during his lifetime he took no steps looking to the payment of the notes, nor does the record show that he in any way asserted any claim to the lands within the knowledge of the grantors, though the record does show that in 1891 he conveyed the property to an assignee for the benefit of his creditors, and the record fails to show that either the assignee, his creditors, or any person claiming under him, asserted any right or claim to the lands, or offered to pay the purchase price, until shortly before the time this suit was filed, when a claim for the first time was asserted by the appellants herein to the lands, though no tender or offer was then made to pay the purchase price which still remains unpaid.

In the case of Kennedy v. Embry, 72 Tex. 387, 10 S. W. 88, the Supreme Court, speaking through Justice Acker, of the then commission of appeals, in disposing of a similar question, uses this language: "Where there has been part performance by the vendee as paying a portion of the purchase money, or taking possession and making improvements under the contract, he would be entitled to reasonable notice of the vendor's intention to rescind. The reason of this rule is obvious. He may be able to give a reasonable excuse for his failure to fully perform that would entitle him in equity to protection to the extent he had performed. If the vendee has actually abandoned the contract or has so acted as to create the reasonable belief on the part of the vendor that he·has abandoned it, the vendor may rescind without notice of his intention, notwithstanding the part performance by the vendee."

Applying the principles announced in this case, we think the record amply sufficient to warrant the conclusion that the appellants and those under whom they claim had abandoned the contract years before Sanborn and Holland filed suit against Miller for the land, and the fact that Miller and those claiming under him have at all times been nonresidents, and that appellants and those under whom they claim were unable to locate them, is ample excuse for a failure to give actual notice of the intention on the part of the grantors to rescind, and while the suit filed by Sanborn and Holland in 1898 against Miller for the cancellation of

the contract is not binding on any person, because Miller was at that time dead and his heirs or legal representatives were not made parties to the suit, we think the filing of this suit is ample proof of the fact that at that time the grantors had rescinded, and we think the further fact that no claim was asserted by appellants or those under whom they claim, and no offer to perform the original contract was made by them or any of them, until shortly before the filing of this suit, is ample reason in equity for denying them the right of specific performance as was sought by them in this suit.

In passing upon a similar question in the case of Thompson v. Robinson, 93 Tex. 165, 54 S. W. 245, 77 Am. St. Rep. 843, the Supreme Court, speaking through Chief Justice Brown, uses this language: "It is frequently said that, when a vendor waived a failure by the vendee to perform, he may subsequently give notice to the vendee, demanding performance within a given time and upon failure may abandon the contract and assume possession and ownership of the land. When it would be unjust for the vendor to disaffirm without notice to the vendee, a court of equity will require that notice should be given. But in this cause, Joshua D. Robinson became the owner of Schleicher's right to this land in 1858, and neither he nor his heirs ever paid the interest or any part of the principal for 32 years. Robinson died in 1866, and his widow and children removed to the state of Massachusetts and continued to reside there, so that there was no opportunity for W. A. Bonnet to give notice to them if it would otherwise have been necessary, which we think under the circumstances it was not. It is true that by the suit against Schleicher the city of San Antonio waived the right to rescind the contract of sale for any antecedent right of Robinson or his heirs to make payment, but it did not relieve them from the obligation thereafter to perform the contract within a reasonable time. Scarborough v. Arrant, 25 Tex. 129. More than 15 years elapsed between the purchase by Mrs. Bonnet and sale by W. A. Bonnet to Thompson, during which time the land had greatly increased in value and no claim had been asserted by the heirs of Robinson, nor was there any offer of performance by them. They lived in another state far from the land, and Bonnet had received nothing from them to be accounted for, Under these circumstances, he had the right to abandon the contract and to convey the land as his own without notice to the defendants in error. We therefore hold that the deed from W. A. and A. J. Bonnet to B. R. Thompson conveyed the legal and equitable title to the land, free from any claim of the heirs of Joshua D. Robinson, and the Court of Civil Appeals erred in reversing the judgment of the district court as to Joshua D. Robinson, Jr., for which error the judgment of the Court of Civil Appeals is reversed and the judgment of the district court is affirmed."

As we view the matter, the same principles of law which control the proper disposition of this cause were also involved in the case of Fullerton et al. v. Scurry County, 143 S. W. 971, in which this court held that the grantees under an executory conveyance were not entitled to actual notice as a prerequisite to the right of the county to rescind the contract for sale of its public free school lands.

[3] Under appellant's second assignment, the proposition is asserted that, because Sanborn and Holland neglected to disaffirm the executory contract and take actual possession or convey to another or foreclose the lien or bring action in trespass to try title for many years after the purchase-money notes were barred by limitation, they thereby affirmed the executory contract and left them and those claiming under them only the remedy of suit upon the debt, and, if limitation were pleaded as a bar to recover thereon, they could then maintain trespass to try title.

We think the record amply sufficient to show that, because appellant's ancestors were nonresidents of the state and their whereabouts could not be ascertained by Sanborn and Holland, the fact that suit was not filed for the land until 1898, is not sufficient to warrant the conclusion that they at any time waived their right to rescind the sale because of failure on the part of Miller and those claiming under him to perform the executory contract, and we think the authorities above quoted amply sufficient to sustain this conclusion.

[4] Under appellant's third assignment, contention is made that Sanborn affirmed the executory contract of sale by the conveyance made by him to Holland of his interest in the notes and the land, and, he having so done, the present appellees are bound thereby.

While the written conveyance from Sanborn to the appellants herein of his interest in the notes and the land bears date June 30, 1910, Sanborn's testimony is sufficient to show that by some partition agreement between him and Holland in 1890 the notes in controversy, as well as all interest formerly owned by Sanborn and Holland in the lands, at least equitable, passed to Holland, and the conveyance executed by Sanborn in 1910 was nothing more than confirmatory of the equitable rights which had been vested in Holland and those claiming under him since 1890, and we therefore think the contention of appellants on this point not well founded from the record, even if it were conceded that appellants could and would be bound by the act of Sanborn, not shown to have been concurred in by Holland, that

might be construed into an affirmance of the executory contract of sale.

Under appellant's fourth assignment, contention is made that, as appellees and those under whom they claim had allowed almost 20 years to elapse without attempting to disaffirm the executory contract of sale and without taking actual possession of the land and without conveying it to another and without foreclosing the vendor's lien thereon and without suing in trespass to try title and without doing any legal act to disaffirm, until the debt for the purchase money was barred by limitation and the lien securing the debt was probably extinguished by laches and after the contract had been affirmed by Sanborn, transferring the purchase-money notes to Holland, appellees could not disaffirm under the facts and circumstances of this case without notice to appellants of an intention so to do and without giving appellants an opportunity of paying the purchase-money notes and discharging the lien.

As stated in disposing of the first assignment, we think the record clearly shows an abandonment of the executory contract of sale by the appellants and those under whom they claim at or about the time the notes matured and the election by appellants and those under whom they claim to rescind as a consequence thereof, and we think when the value of the property at the time of the maturity of the notes is considered, in connection with the further fact that no effort was made until the answer was filed in this suit to carry out the contract by appellants and those under whom they claim, and the fact that Sanborn and Holland actually instituted a legal proceeding for the title and possession of the property and not for the collection of the debt in 1898, is ample to support the conclusion that the contract of sale had been rescinded legally as early as 1898, and we fail to find anything in the record on which appellants can base a contention that thereafter any rights, which they or those under whom they claim might theretofore have had in or to the land, had been revived as a result of any act on the part of appellees or those under whom they claim.

The fact that appellants and those under whom they claim have continuously since 1890 been nonresidents of the state, and their whereabouts could not be ascertained by the exercise of ordinary diligence, we think, is ample to relieve appellees and those under whom they claim from the necessity of having given actual notice of their intention to rescind.

Under appellant's fifth assignment, the proposition is asserted by appellants that, though Sanborn and Holland attempted in 1898 to disaffirm the executory contract of sale, that result was not accomplished, as actual possession of the lands was not taken, and as that act of disaffirmance occurred long after the lien was extinguished by laches.

We think there is evidence sufficient found in the record to show that Sanborn and Holland at no time intended to waive any legal right they had as a result of appellants', and those under whom they claim, failing to comply with the executory contract, and we think the suit filed in 1898 cannot be held to be the first evidence in the record of an intention by Sanborn and Holland to disaffirm the contract as a result of the failure on the part of appellants and those under whom they claim to comply with their portion thereof.

The trial court, in disposing of the case, saw fit, as a matter of equity, to require that appellees refund to appellants the portion of the purchase price that had been paid on the land with interest, and in so doing we think appellants have acquired all the equities the record would warrant in their behalf.

Finding no errors in the record, and believing that a righteous judgment was rendered under the law, the judgment of the trial court will in all things be affirmed, and it is so ordered.