HUGHES et al. v. BURTON LUMBER CORP.
(No. 7565.)*

(Court of Civil Appeals of Texas. Dallas. June 17, 1916. Rehearing Denied Oct. 14, 1916.)

1. VENDOR AND PURCHASER ⟐99—EXECUTORY CONTRACT — FORFEITURE — DEATH OF ONE VENDEE.

Where only a small part of the purchase price was paid on a contract of sale reserving vendor's lien, the sale was executory, whether or not a deed had been executed and delivered to vendees, and the right of the vendor to rescind the contract and recover back the property was not destroyed by death of one of the vendees.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 167–169; Dec. Dig. ⟐99.]

2. VENDOR AND PURCHASER ⟐101—RESCISSION—COMMUNITY INTEREST—NOTICE TO SURVIVOR.

Where a man and his wife, having no children acquired a community interest by part payment on a land contract, the notice required of vendor's intention to rescind, after the husband's death, could legally be given to his widow, as survivor of the community.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 170–174; Dec. Dig. ⟐101.]

3. VENDOR AND PURCHASER ⟐296—EXECUTORY CONTRACT—RECOVERY BACK OF LAND —WAIVER.

Where the vendor has done nothing to waive his right, he may in every case of an executory sale of land, where the vendee defaults in payment of the purchase money, maintain a suit for the recovery back of land.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 832; Dec. Dig. ⟐296.]

4. VENDOR AND PURCHASER ⟐299(1) — EXECUTORY CONTRACT—NONPAYMENT—FORFEITURE.

Payment by a vendee before he died of only a small portion of the purchase price on a land contract, possession thereafter by his widow, and the fact that by indulgence of vendor a small portion of the purchase money note falling due was not promptly paid at maturity, and that the land had enhanced in value since the contract was made, were not sufficient to prevent the vendor's recovery of the land, and would not entitle vendees to defeat vendor's recovery of the land by paying or actually ten-

dering the balance of the purchase price, several years after the date of the contract.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 837, 839, 840; Dec. Dig. ☞299(1).]

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Action by the Burton Lumber Corporation against Mrs. Susie Hughes and others. From judgment for plaintiff, defendants appeal. Affirmed.

W. T. Strange, of Dallas, and E. G. Senter, of Waco, for appellants. Spence & Haven, of Dallas, for appellee.

TALBOT, J. This is an action in the ordinary form of trespass to try title, brought by the appellee against the appellant Mrs. Susie Hughes, formerly Mrs. Stahl, to recover certain described property situated in the city of Dallas, Tex. It appears that in the latter part of 1904, or the first of the year 1905, Louis Stahl, who was then the husband of appellant, entered the employment of the appellee as its bookkeeper in the city of Dallas, Tex., and continued as such until about November 30, 1907. In 1906 the appellee, Burton Lumber Corporation, was compelled to move that portion of its lumber yard which was located on property belonging to the Texas & Pacific Railway Company, and at that time bought some eight lots about a block in front of its then location. The lots purchased had a number of houses on them, and all of these houses were sold by the company, except two. At this time appellee bought another lot in the city of Dallas, approximately one-half of which is involved in this suit, as a place on which to put the said two houses which had not been sold. Appellee then employed a contractor to move the said two houses, and had him place one of them, a two-story house of about six or seven rooms, on the lot in controversy and to repair the same. The lot cost $500, the house cost $400, and it cost $1,377.37 to move the house upon the lot, and to make the necessary repairs, thereby making the house and lot cost the sum of $2,277.37. Louis Stahl wanted to purchase this house and lot from appellee at and for the said sum of $2,277.37, and entered into an agreement with appellee to that effect. At the time this agreement was entered into Louis Stahl had to his credit with appellee $358.07. This amount was deducted from the $2,277.37, and Stahl executed and delivered to appellee five notes of $383.86 each, for the remaining unpaid purchase money of the land aggregating $1,919.30. Each of these notes was dated October 9, 1906, payable, respectively, in one, two, three, four, and five years, bore interest at the rate of 7 per cent. per annum, provided for the payment of 10 per cent. thereof as attorney's fees, if placed in the hands of an attorney for collection or collected by suit, and expressly reserved the vendor's lien on the land to secure its payment. Each of said notes stipulated that the failure to pay the same or any installment of interest thereon when due matured all or any one of them, at the election of the holder. A deed of trust also was executed by Stahl (at the date of said notes) to S. P. Darnell as trustee. At the time of the execution and delivery of the notes and deed of trust by Stahl a deed from the appellee to him reserving the vendor's lien on the property was drawn up, but whether this deed was ever delivered to Stahl was in dispute and was undetermined in the trial in the district court. At the time Stahl purchased the house and lot and probably before the execution and delivery of the purchase-money notes, he and his wife moved into the house and occupied the premises as their homestead. On December 26, 1906, Stahl paid $300 on his notes, which was sufficient to pay the interest on the first note maturing up to the date of its maturity, which was October 9, 1907, and $165 of the principal of said note. Soon after this payment and in 1907 Stahl became sick, and his sickness was of such a serious nature that he was forced to take a leave of absence from his duties as bookkeeper for the Burton Lumber Corporation and spend some two weeks at Mineral Wells in an effort to regain his health. He also took treatment at a local sanitarium in Dallas. The treatments which he received did not arrest the malady from which he was suffering, and he died March 30, 1908. During all this time he and the appellant Mrs. Hughes were occupying the property in controversy. From December 1, 1907, until April 25, 1908, the Burton Lumber Corporation paid to the appellant, then Mrs. Susie Stahl, different sums of money in cash, also paid telephone bills, water rent, etc., due at the Stahl homestead, paid sanitarium bills for treatment administered to Louis Stahl, and paid the burial expenses when Louis Stahl died—all of which amounted to the sum of $507.66. At Stahl's death the appellee had possession of the notes and deed of trust executed by him, and there was among them a deed from the company to Stahl not executed. The witnesses for the company claimed on the trial that this was the only deed ever drawn, and those of the appellant claimed that another was drawn and executed and delivered and a copy made for the company to keep. On this issue the jury failed to agree. On or about May 1, 1908, appellee demanded of Mrs. Stahl payment of the account and the remainder due on all the vendor's lien notes. When this demand was made she stated to appellee's representative that she could not pay anything on the notes or on the account, and refused to do so. She continued to occupy the house from the date of Louis Stahl's death, and in August, 1908, the appellee, Burton Lumber Corporation, instituted this suit and had a writ of sequestration issued, and took the property into its possession. It seems

the papers were lost, and the case remained on the docket without any proceedings being had until about May 20, 1915, when both parties filed amended and supplemental pleadings on which they went to trial. The nature of the suit was not changed by appellee's amended petition, but remained a suit to recover the property. Defendant's pleadings consisted of a general denial, plea of not guilty, and plea in reconvention or cross-action for damages for wrongful suing out of the writ of sequestration; Mrs. Hughes alleging that same was sued out wrongfully and maliciously. The cross-action further sets up that in case plaintiff claimed the right to repossess itself of said premises by reason of the failure to pay the purchase money, that the defendant Mrs. Hughes and husband paid several hundred dollars on the purchase price; that the value of the premises had greatly increased, and that they, the defendants, offered to pay whatever was still due on said premises. They then set up the rental value of the premises since they were sequestered, and her other damages, and offered to offset whatever was due on the purchase price, and prayed for judgment for the difference, and further prayed that if the plaintiff had any relief, it be confined to a foreclosure of its lien for the purchase price. The supplemental petition of plaintiff consisted of denials of the pleadings of the defendants, and asserted the institution of the suit and the sequestration proceedings as a proper exercise of its right to rescind the contract of sale on account of the failure to pay the purchase price. By this supplemental petition the appellee also tendered into court for cancellation the five vendor's lien notes given for the land. The case was submitted to the jury on special issues, and upon their findings judgment was rendered in favor of appellee for the title and possession of the property sued for, and the case is now before this court on appeal.

In response to the special issues submitted to them, the jury found the following facts: That Louis Stahl agreed to purchase the property in question after same had been put in satisfactory repair, and pay therefor the sum of $2,277.37, as follows: $358.07 paid by bonus and returned merchandise, and the balance of $1,919.30 to be paid by five vendor's lien notes of $383.86 each. That there was only one payment made on said notes, and that was from the bonus of $300 received by Louis Stahl from Burton Lumber Corporation on December 26, 1906, and that each payment was applied as follows: $165.65 on the principal of note No. 1, and $134.35 applied on interest. That the purchase money which Stahl was to pay to Burton Lumber Corporation for the property in controversy at the date Stahl died, March 30, 1908, was not paid, and that Stahl was in default in the payment of such purchase money, and that there was due at the date of Louis Stahl's death, the sum of $218.22 on note No. 1 and interest on the notes from October 9, 1907, to March 30, 1908. That Stahl's monthly salary from the Burton Lumber Corporation was $70 per month. That the Burton Lumber Corporation, prior to the commencement of this suit, demanded of the appellant Mrs. Susie Stahl (now Mrs. Susie Hughes) that she pay the purchase money for the property in question, then past due, or that she surrender the property. That Mrs. Susie Stahl (now Mrs. Susie Hughes) did not tender to Burton Lumber Corporation the performance of the agreement between Burton Lumber Corporation and Louis Stahl with regard to the conveyance by the corporation to Stahl of the property in controversy. That at the time of the bringing of this suit on August 3, 1908, there was due to the Burton Lumber Corporation the sum of $1,753.65, with interest from October 9, 1907, to August 3, 1908, from Louis Stahl as purchase money for the property in controversy.

The appellant presents several assignments of error, but it is unnecessary to state and discuss them separately. The appellant contends, in substance, which discloses the question or questions raised for adjudication, that the trial court erred in rendering judgment in favor of the appellee for the property in controversy in the absence of a finding by the jury as to whether or not deed was executed and delivered by appellee to Louis Stahl, for the reason that if such deed was executed and delivered, then, since the jury found that Stahl had paid $500 on the purchase price of said property and went into possession of the same appellee was not entitled to recover the property without paying or offering to pay back said sum, and for the further reason that if the right to rescind the sale before the death of the said Stahl existed, his death destroyed such right, and appellee could not thereafter rescind except through a court proceeding; that the court erred in rendering judgment in favor of appellee, because, even if no deed were executed and delivered to Stahl, the finding of the jury and undisputed evidence showed that there was at least a contract of sale, after which the purchaser Stahl went into possession and paid part of the purchase money; that the only note that was due at the date of the institution of this suit became due October 9, 1907; that thereafter the appellee received a $300 cash payment thereon about December 26, 1907, and continued until the death of Stahl on March 30, 1908, to treat the contract of sale as in force regardless of the maturity of said note, and that if appellee demanded possession before the institution of this suit, such demand was only in the alternative that if Mrs. Stahl could not pay the notes or rent she give possession; that thereafter appellee retained possession of said notes and treated them as continuing and never, until May 20, 1915, made any offer to return them; that in the

bill rendered to Mrs. Stahl at the time it is claimed the demand for possession was made the entire amount of the original notes was demanded; that, before appellee ever asked in its pleadings for rescission by reason of failure to pay the purchase price, appellants filed their amended answer showing that it would be inequitable to allow a rescission, and asking that appellee be compelled to seek a foreclosure instead, and offering to pay any amount still due on said notes.

[1, 2] We are of opinion that an answer by the jury of the question whether or not the appellee executed and delivered to Louis Stahl a deed to the property in controversy was not essential to the rendition of a proper judgment in the case. The findings, without an answer to that question, were sufficient for that purpose, and support the judgment that was rendered. The undisputed evidence shows that Stahl paid a very small part of the purchase price cash, and executed and delivered to appellee the five notes offered in evidence for the balance; that the vendor's lien was reserved to secure the payment of said notes, and that said notes, with the exception of about $300, had not been paid. The sale was therefore executory whether the deed was executed or not, and a finding either way upon that question would have been immaterial in determining the right of appellee to recover the title and possession of the property. Nor do we think the death of Louis Stahl destroyed the right of appellee to rescind the contract and recover back the property. The interest that Stahl and his wife, Mrs. Susie Stahl, acquired in the property by the purchase from appellee was a community interest, and the notice required of appellee's intention to rescind could properly and legally be given to Mrs. Stahl, the survivor of the community. It is not believed that the cases cited by appellant are in point and decisive of the question. On the other hand, we think the case of Herman v. Gieseke, 33 S. W. 1006, cited by appellee, very clearly illustrates the principle involved and sustains our conclusion. We quote from the syllabus of that case the following:

"The terms of a contract for the sale of land are not changed by the death of the purchaser, leaving heirs who are minors or under coverture, while they are not bound by the contract, if they seek to enforce it they can only do so in accordance with its terms."

The rule announced in the quotation applies with stronger reason in a case, like the present, where the wife, whose rights under the contract are those of a surviving partner of her deceased husband, and there were no children.

The evidence is sufficient to show that appellee, before the institution of this suit, gave to Mrs. Stahl notice of its intention to rescind. The language used to express such intention was not as specific as it might have been, but sufficient to apprise her that such

was its purpose, unless the balance of the unpaid purchase money was paid.

[3, 4] But the chief contention of appellants, as we gather from their counsel's brief, is that forfeitures are not favored any more in executory contracts for the sale of land than in any other transaction, and that whenever any vendor files a suit to rescind by reason of a vendee in possession failing to pay a balance on the purchase price, part having been paid, and the vendee sets up the fact of the possession and part payment, and asks the court to require him to foreclose his lien instead for the amount due, equity will deny the rescission and require him to take judgment for his money with foreclosure. This appellants assert to be the law of this state, and insist that it should be applied under the facts shown in the instant case. That it may be argued from some of the adjudicated cases in this state with much force that the proposition contended for by appellants is a correct one must be conceded, but upon an examination of the cases apparently announcing such a doctrine, it will be discovered that in all of them the vendor had done something to waive his right to rescind and recover the land. In Moore v. Giesecke, 76 Tex. 543, 13 S. W. 290, Mr. Justice Henry reviewed practically all the cases that had been decided up to that time involving the question, and after stating that he could see no good reason why the right of the vendee to equitable relief, when he is sued for the land, should at all depend upon the character or form of the plaintiff's suit, and that whether or not he is entitled to any equitable relief will be a proper subject of inquiry in every case, and that when the circumstances of the transaction show him to deserve it, it should be administered, and when they do not it should be denied, said:

"The rule has been repeatedly and distinctly asserted, and is left by this decision in unimpaired force, that where the vendor has done nothing to waive that right he may in every case of an executory sale of land where the vendee makes default in payment of the purchase money maintain a suit for the recovery back of the land."

In further enunciation of the rule that governs in such cases Judge Henry used the following language:

"We repeat what has already been said when we say that when the vendor's suit is predicated upon the mere refusal of the vendee to pay the whole consideration contracted for, the facts that the vendee has paid part of the consideration and made valuable improvements, coupled with possession of the property, unaided by some other sufficient equity, will not entitle him to recover for such purchase money or improvements. In such cases, when the vendor has neither waived his legal rights nor committed any default, he cannot be involuntarily taxed with improvements made upon the property without his consent, or be made to pay a price for recovering it back."

The rule here announced has been followed, we believe, since the opinion declaring it was handed down, and is now the well-established law of this state. So recognizing it,

this court, in Crain et al. v. National Life Ins. Co., 56 Tex. Civ. App. 406, 120 S. W. 1098, said:

"Where the vendor, or those claiming under him, has done nothing to waive the right, he may in every case of an executory sale of land, * * * when the vendee makes default in payment of the purchase money, maintain a suit for the recovery of the land."

We can see no good reason for holding that this general rule is not applicable in the present case. The evidence, in our opinion, fails to disclose any such waiver, or act done by the appellee amounting to such affirmance of the contract of sale, as would estop it from asserting and enforcing its superior title to the property in controversy. The payment by Stahl of the small amount of purchase money shown, and possession of the land and the probable enchanced value thereof since his purchase, unaided by some other sufficient equity, would not be sufficient either in law or equity. Neither would the fact that a small portion of the first purchase money note falling due, by the indulgence of appellee, was not promptly paid at the maturity of said note. Moore v. Giesecke, supra; Crain et al. v. National Life Ins. Co. supra. Appellants are in no position under the evidence adduced and findings of the jury to invoke in this court the rule that justice and equity demand that the harsh and rigorous remedy of rescission of the contract and recovery of the land should not be allowed when the vendor has been paid a large part of the purchase money and the vendee is ready, willing, and able to pay off the remaining indebtedness. The evidence shows no such equities that call for the enforcement of this equitable principle. It shows without contradiction that the only payments made by Stahl on the purchase price of the land were the $358.07 cash at the time of the purchase, and the $300 about December 26, 1907. Mrs. Stahl has paid nothing, and it seems that she was insolvent at the date of the trial. Appellee brought this suit to recover the land August 3, 1908, about four months after Stahl's death, and the original answer of appellant Mrs. Stahl was filed September 12, 1908. In this answer of appellant she made no tender of the purchase money due, and did not offer to carry out the contract of sale. Not until the filing of the amended answer on the 20th day of May, 1915, nearly seven years after the institution of the suit, did she make any tender whatever or offer to carry out the contract of purchase. The tender made in the answer filed May 20, 1915, is in the following language:

"These defendants are ready and offer to pay whatever amount, if any is now due to plaintiff on said premises on said purchase price for the same."

There was no allegation that she was able to pay the balance of the purchase money. On the contrary, she alleged in her said answer filed May 20, 1915, that at the time she was ejected from the premises in controversy by the writ of sequestration, "she was wholly and totally without means." The sale was clearly an executory one, only a small portion of the purchase money was paid, and the appellee having done no act that could fairly be construed into an affirmance of the contract, and the facts and circumstances in evidence being insufficient to show that it would be unequitable for appellee to recover the property sued for, appellants could only defeat such recovery by paying or actually tendering the balance of the purchase price represented by the notes given therefor.

The appellants further contend that the court erred in rendering judgment in favor of appellee for the reason that the findings of the jury to the effect that the affidavit for the sequestration sued out was true, and that appellant Mrs. Hughes was not entitled to damages on account thereof, were unsupported by the evidence, inconsistent with their failure to find whether or not a deed had been executed and delivered to Stahl for the property in controversy, and therefore such findings should have been disregarded. This contention we regard as being without merit, and will be overruled.

In stating the nature and result of the suit appellants call our attention to the fact that no specific disposition was made of their cross-action for damages, but such omission is neither assigned nor argued as a reason for reversing the case. It may be said, however, that it has been held by our Supreme Court, and by some of our Courts of Civil Appeals, "that while the judgment of the trial court, in so failing to dispose of such an action, is irregular and imperfect in form, yet it is sufficient to support the appeal," and furnishes no sufficient ground for a reversal. Trammell v. Rosen, 106 Tex. 132, 157 S. W. 1161; Crain v. National Life Ins. Co., supra; Lewis v. Smith, 43 S. W. 294; Bemus v. Donigan, 18 Tex. Civ. App. 125, 43 S. W. 1052; Parker v. Emerson, 176 S. W. 146.

Finding no reversible error in the record, the judgment is affirmed.

