## SCOTT & CARMODY v. CANON.
### (No. 320–3659.)

(Commission of Appeals of Texas, Section A. May 3, 1922.)

**1. Vendor and purchaser ⬅️93—Vendor entitled to rescind when vendor's lien notes not paid.**

A vendor retaining a vendor's lien to secure purchase-money notes was entitled to rescind on failure of the vendee to pay the notes.

**2. Evidence ⬅️265(17) — Recital in lessor's conveyance of land not binding on lessee.**

A recital in a vendee's deed reconveying the land to his vendor that it was in consideration of the cancellation of the notes given on the original sale, in the nature of an admission as between the parties, could not bind one to whom the vendee had given an oil, gas, and mineral lease, and did not, as against him, establish nonpayment of the notes.

**3. Vendor and purchaser ⬅️102—Conveyances by vendor held to warrant finding of rescission if purchase-money notes unpaid.**

Where a vendor, reserving a lien to secure payment of the purchase-money notes, about a year after the maturity of the last of the notes, gave a deed of trust on the land and subsequently a second deed of trust, and about five years after the maturity of the notes conveyed the land by warranty deed, a finding that he rescinded the sale at the time he gave the first deed of trust would have been warranted.

**4. Vendor and purchaser ⬅️231(1)—Vendee's lessee held not innocent purchaser where rescinding vendor's deed was on record.**

Where a vendor rescinded for nonpayment of the vendor's lien notes and conveyed to third persons by a warranty deed which was recorded at the time a mineral lease from the vendee was acknowledged, the lessee was given constructive notice by the record, and was not an innocent purchaser in good faith.

**5. Vendor and purchaser ⬅️242—One whose lease was not acknowledged until after vendor had conveyed held to have burden of showing grantee's notice.**

Where a mineral lease was made by a vendee before a conveyance to third persons by the vendor, but not acknowledged until after the conveyance was recorded, it devolved on the lessee to prove that the grantee had actual notice of the lease.

**6. Evidence ⬅️265(17)—Vendor's acceptance of reconveyance not evidence that he had not previously rescinded as against his grantees.**

That a vendor took a deed from a vendee reconveying the land to him was not proof that he had not previously rescinded the sale as against those to whom he had conveyed by warranty deed, and could not affect the status of their title.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Suit by Scott & Carmody against M. B. Canon. A judgment for plaintiffs was reversed, and judgment rendered for defendant by the Court of Civil Appeals (230 S. W. 1042), and plaintiffs bring error. Reversed and remanded.

See, also, 217 S. W. 429.

W. W. Ballew, of Corsicana, for plaintiffs in error.

Norman, Shook & Gibson, of Rusk, for defendant in error.

RANDOLPH, J. W. H. Willis was the common source of title of the land in controversy in this suit. He conveyed it to Festus Crysup by general warranty deed dated May 29, 1911. The said deed from Willis to Crysup recited a cash consideration of $100 and the further consideration of two promissory notes for $400 and $435, respectively, each

bearing even date with the deed, the first due May 29, 1912, and the other May 29, 1913, each bearing interest at 10 per cent. per annum, and the payment of each being secured by the retention of an express vendor's lien on the land.

On September 16, 1913, Willis executed a deed of trust to B. D. Dashiell, trustee for the Farmers' Guaranty State Bank of Jacksonville, Tex., to secure the payment of a note for $5,200, payable to that bank, and on August 5, 1915, executed a like deed of trust to secure the bank in the payment of another note for $2,031.85, each of said deeds of trust conveying the land in controversy.

On the 23d of March, 1918, Willis executed a general warranty deed reciting a consideration of $500 paid, whereby he conveyed the land in controversy to J. M. Scott and T. J. Carmody.

On March 25, 1918, the Farmers' Guaranty State Bank executed a release of the deed of trust securing the payment of the ₱2,031.85 note, but no release was shown of the $5,200 deed of trust.

By instrument dated March 1, 1918, acknowledged August 1, 1918, Festus Crysup leased the land in controversy for "the sole and only purpose of mining and operating for oil, gas, and minerals, and laying pipe lines and building tanks, power stations, and structures thereon to produce, save, and take care of said products, all that certain tract of land," etc., describing the land in controversy by metes and bounds.

On the 2d day of August, 1918, Festus Crysup, by warranty deed, conveyed the land in controversy to Willis. The consideration recited in this deed was $100 and the cancellation and surrender of the two notes described in the deed from Willis to Crysup, and stating the purpose of the conveyance to be to connect up the title to said property "and to give J. M. Scott and T. J. Carmody a good title thereto under and by virtue of deeds from said Willis and Ragsdale et al."

Scott & Carmody brought this suit against M. B. Canon, asserting paramount legal title in themselves, and that defendant, Canon, was asserting some claim or interest in and to the mineral rights under an instrument purporting to be an oil and gas lease, that the said lease was fraudulently and fictitiously dated on the 1st day of March, 1918, when as a matter of fact it was not signed or executed until the 1st day of August, 1918, and was not filed for record until August 3, 1918, and that same was executed for the sole purpose of attempting to cast a cloud upon the title of plaintiffs to said land, also setting out their claim of title, and that Willis upon the nonpayment of the above-described vendor's lien note had rescinded the sale to Crysup and entered into possession of the land, and further asserting that his renewal of the ownership was evidenced by his execution of the two deeds of trust above described,

also charging full knowledge on the part of Canon that Crysup owned no interest in the land, and that the sale by Willis to Crysup had been rescinded, and that said lease was collusively entered into between Crysup and Canon for that purpose.

By his answer defendant, Canon, among other defenses, entered a plea of not guilty and disclaimed all interest in the land, except such rights as he had acquired under said lease, and that the notes above described were barred by limitation, denying that he had actual or constructive knowledge of any want of right on the part of Crysup to said land in the making, execution, and delivery of said lease to him, defendant, Canon, and pleading, innocent purchase, without notice, and for a valuable consideration.

The case was apparently tried by the court without the intervention of a jury, and judgment rendered for the plaintiff. From this judgment defendant, Canon, appealed, and the Court of Civil Appeals at El Paso reversed the case and rendered judgment for the defendant Canon. 230 S. W. 1042.

The Court of Civil Appeals held that Crysup and Willis were not necessary parties, and that the execution by Willis of the deeds of trust to secure the Farmers' Guaranty State Bank in the payment of the notes did not have the legal effect to rescind the deed from Willis to Crysup; that on the 1st day of March, 1918, Willis had not rescinded the conveyance to Crysup; that the statutes of limitation had then barred his right to recover on the notes and barred his right to recover the land, and that the superior title to the land had thereby vested in Crysup; that a lease to lands for more than one year is a conveyance under article 1103, Vernon's Sayles' Civil Statutes, requiring that a conveyance of land must be subscribed and delivered by the party disposing of same, and that the controlling question in the case arises on the construction to be given to the oil and gas lease from Crysup to Canon, and holding that the lease was not revocable at the will of Crysup.

We cannot agree with these conclusions of the Court of Civil Appeals in so far as they are made the basis of the court's judgment in holding that Scott & Carmody by their deed from Willis had obtained no title from him, and that Willis had none to convey.

[1] As to whether or not Willis' right to rescind was barred is dependent upon whether or not he had rescinded the sale to Crysup previously. Plaintiffs contend that the giving of the deeds of trust was proof of the resumption of title by Willis. The failure of Crysup to pay the purchase-money notes given to Willis gave Willis the right to rescind.

In the case of T. E. Rooney v. W. W. Porch, 239 S. W. 910, recently decided by the Commission of Appeals and adopted by the Supreme Court, but not yet [officially] pub-

lished, Judge Hamilton, speaking for the Commission, says:

"The vendor's lien retained by Ruff in his deed to Pierce gave him two alternative rights upon failure to pay the purchase money—one to foreclose and take a personal judgment for any balance left unpaid after applying the proceeds of the sale to the debt; the other to rescind the contract, and take back the land. No right to either remedy arose unless there was a breach of the contract to pay the purchase price. Ruff could not rescind without a right to rescind. He could have had no right to rescind without, at least, a breach of the contract to pay the purchase price."

[2] The evidence fails to disclose whether or not the purchase-money notes were ever paid. It is true that the deed from Crysup to Willis reconveying the land recites that it was executed in consideration of the sum of $100 and the cancellation of the two notes given by Crysup to Willis in the original sale. This, being in the nature of an admission, would be evidence as between Crysup and Willis, but certainly cannot be used to bind Canon, whose rights, if any, had been fixed by the conveyance preceding this admission in the deed, and does not for that reason establish the nonpayment of the notes.

[3] When did Willis rescind, if he had the right to do so? The execution of the two deeds of trust by Willis to the bank granting liens on the land in controversy were distinct assertions of ownership by Willis, and were such acts as must have been taken into consideration by the trial court as a circumstance tending to establish rescission. This rescission was, however, more clearly established when Willis deeded the land to Scott & Carmody. It is true that the deed was not executed by him until 5 years after the maturity of the purchase-money notes given by Crysup to Willis, but the execution of the first deed of trust by Willis to the bank was only a little over a year after the maturity of the last of the Crysup notes, and was followed by the giving of the second deed of trust; hence the trial court might well have held that the rescission occurred at that time.

In the case of Rooney v. Porch, supra, the deed which was claimed as the act of rescission was executed some 11 or 12 years after the maturity of the obligation given in the original sale, and it is held that, when proof of the failure to pay the purchase money is made, and the right to rescind is thereby es-

tablished, such deed constituted the rescission.

[4] The contention of defendant, Canon, that he was an innocent purchaser in good faith, for a valuable consideration, cannot be sustained for the reason, if for no other, that at the time the lease was acknowledged the deed from Willis to Scott & Carmody was of record, and he was given constructive notice of same by such record.

[5] The lease, it is true, was dated March 1, 1918, but it was not acknowledged until the 1st of the next August. It therefore devolved on defendant Canon to prove that Scott & Carmody had actual notice of same, which he did not do. Ives v. Culton (Tex. Civ. App.) 197 S. W. 619; Houston Oil Co. v. Ainsworth (Tex. Civ. App.) 192 S. W. 614; Niles v. Oil Co. (Tex. Civ. App.) 191 S. W. 748; Kenley v. Robb (Tex. Civ. App.) 193 S. W. 375.

[6] The contention is also made by defendant, Canon, that the fact that Willis took a deed from Crysup, reconveying the land to him, is proof of the fact that Willis had never intended to, and had not rescinded the original sale to Crysup, but that such transaction itself showed that Willis viewed it as a continuing sale. To our minds this deed has no such effect. It could not affect the status of the title in Scott & Carmody, for it was executed several months after they had received their title. It might have the effect as between Crysup and Willis of estopping Crysup from claiming a refund of the $100 in the original transaction if he were entitled to it, which we do not hold.

These holdings practically dispose of all questions before the court, and we therefore recommend to the Supreme Court, in view of our holding that the recital in the deed introduced in evidence does not establish the failure of Crysup to pay the Willis notes as against Canon, and the consequent lack of evidence to establish that fact, that the judgments of the Court of Civil Appeals and of the district court be reversed, and this cause be remanded to the district court for a new trial, and that all costs be adjudged against defendant in error, Canon.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.