**TOLER et ux. v. KING.  (No. 1749.)**

Court of Civil Appeals of Texas.   Beaumont.
Nov. 23, 1928.

Rehearing Denied Dec. 5, 1928.

A. L. Shaw, of Beaumont, for appellants.

Minor & Lipscomb, of Beaumont, for appellee.

WALKER, J. Appellee, L. W. King, instituted this suit in trespass to try title and for rent against Mrs. Maud Toler and her husband to recover the title and possession of lot No. 7, block No. 1, Bettie J. addition to the city of Beaumont. The defendants answered by general demurrer, general denial, pleas of limitation, homestead, and the statute of frauds. The judgment was in favor of appellee upon an instructed verdict.

The facts are as follows: On the 20th day of June, 1918, appellant Mrs. Maud Toler was the wife of E. A. Le Roy. For some years immediately prior to that date she and her husband occupied lot No. 5 of said block No. 1 as their home. On that date John Johnson deeded to E. A. Le Roy lots Nos. 6 and 7 of said block No. 1 upon the recited consideration of $300, for which $20 was paid in cash and the balance in a vendor's lien note, maturing in monthly installments of $10 each, beginning with September 1, 1918. After buying these lots, Mr. and Mrs. Le Roy inclosed them under a wire fence with lot No. 5, and held, used, and occupied them as a part of their homestead until 1922, when Mrs. Le Roy, for reasons stated by her, left her husband's home. On April 19, 1923, she instituted suit for divorce against him, which was granted September 27, 1923. E. A. Le Roy remained in possession of the home until his death on January 4, 1925. The issue was raised that the amount of the $280 vendor's lien note was reduced by payments to $80. What part of this was paid before the divorce, and what part subsequent to the divorce, was not shown. After the divorce was granted, E. A. Le Roy told Johnson, his vendor, that he could not pay the balance on the note and asked him to release lot No. 6 from the vendor's lien and take back lot No. 7 in satisfaction of the balance due on the vendor's lien note. Johnson agreed to do that, and on the 14th day of January, 1924, executed to Le Roy a warranty deed conveying him lot No. 6 upon the recited consideration of $150 paid. Le Roy did not surrender to Johnson the original deed, nor did he execute a conveyance back to Johnson of lot No. 7. Mrs. Le Roy was not a party to this transaction, knew nothing about it, and was in no way consulted in regard to it. On the 11th day of April, 1924, Johnson conveyed lot No. 7 by warranty deed to appellee, L. W. King, upon the recited consideration of $200 cash, which was, in fact, paid upon the execution and delivery of the deed. King took this deed believing from the conversations he had had with Le Roy that Le Roy had abandoned his claim to lot No. 7, and he bought the property from Johnson with Le Roy's knowledge and consent, believing that Johnson had rescinded the original sale under which he had conveyed to Le Roy lots Nos. 6 and 7, Before buying, he examined the deed records and found no deed of record from Johnson to Le Roy. For some reason not fully explained by the record, King thought that the sale between Johnson and Le Roy was evidenced only by a contract of sale and not by a deed. King did not know of the existence of the deed until after it was recorded on December 16, 1926. After buying lot No. 7, appellee, King, erected valuable improvements thereon in the form of a dwelling house and the necessary outhouses, which he rented continuously until May, 1927. It was occupied by a Mr. Roscoe from July, 1926, to May, 1927. On the 15th of May, 1927, appellee, through an agent, ejected Mr. Roscoe. As soon as Roscoe moved out, appellant Mrs. Toler, who was at that time living in her old home immediately adjacent to lot No. 7, took possession of lot No. 7 and the improvements thereon, refused to surrender possession to appel-

lee, and remained in possession until this suit was tried. In this connection, it should be said that shortly after the death of Le Roy, appellant Mrs. Le Roy took possession of the old home and lived therein until she moved over into the appellee's improvements on lot 7. The judgment in appellee's favor awarded him title and possession and $130 for the rental value of the premises.

Appellants complain that the court erred in instructing a verdict in appellee's favor, insisting that under the uncontradicted evidence the verdict should have been instructed in their favor, but, if in error in that contention, that the issues should have gone to the jury.

### Opinion.

■■ The court correctly instructed the verdict in appellee's favor. It was shown beyond controversy that neither Le Roy nor his wife ever paid or offered to pay the purchase price due under the original sale of 1918. The most that can be said of the evidence on that issue in appellants' favor was that there was a balance due of $80, and as to this balance no tender of payment was made by the answer, nor was any excuse pleaded for not making tender. As that sale was executory, Johnson, holding the legal title, had the right to rescind upon default in the payment of the vendor's lien note. The rule is thus stated by Judge McClendon, speaking for the Commission of Appeals in Bunn v. City of Laredo, 245 S. W. 426: "It has been the uniform holding of our courts from the earliest times that, however absolute may be the terms of such conveyance, the contract of sale is treated as executory between the vendor and vendee and those holding under them until the purchase money is fully satisfied; and that, in addition to all other remedies to enforce payment of the purchase money, the vendor has the alternative remedy, so long as the purchase money is not paid, to rescind the contract of sale and recover the land upon the strength of his superior title as an unsatisfied vendor." See, also, Texas & South Western Digest, Vendor and Purchaser, § 296. Upon default, the holder of the legal title under an executory contract for the sale of land may rescind the sale and take possession or sell to another, who under such sale may enter and hold possession. Evans v. Ashe, 50 Tex. Civ. App. 54, 108 S. W. 398, 1190; Hughes v. Burton Lumber Corporation (Tex. Civ. App.) 188 S. W. 1022. Having the right to rescind, the facts show without controversy that Johnson exercised that right. Holding the superior title upon default in payment of the vendor's lien note, he sold to King. That sale constituted a rescission. Evans v. Bentley, 9 Tex. Civ. App. 112, 29 S. W. 497, 36 S. W. 1070; Waggoner v. Tinney, 102 Tex. 254, 115 S. W. 1155; Sherring v. Augustus, 11 Tex. Civ. App. 194, 32 S. W. 450; Scott & Carmody v. Canon (Tex. Com. App.) 240 S. W. 304. The deed by Johnson to King had the effect of conveying to King the legal title. The institution of this suit by King, the holder of the legal title, against appellants, who had defaulted in the payment of the vendor's lien note, within itself constituted a rescission. Rockhill Country Club Co. v. Nix (Tex. Civ. App.) 198 S. W. 155; Miller v. Horn (Tex. Civ. App.) 149 S. W. 769; Texas & South Western Digest, Vendor and Purchaser, § 102.

■ This right of rescission, reserved by law to Johnson as the holder of the legal title, could have been defeated by appellants only by a plea setting up facts showing that its exercise would be inequitable. Efron v. Burgower (Tex. Civ. App.) 57 S. W. 306; Booty v. O'Connor (Tex. Civ. App.) 287 S. W. 282. Appellants have no such plea or proof. There was no plea of payment or proof of payment. There was no plea or proof of enhanced value nor of valuable improvements. Their contention is, not that the rescission was inequitable, but that no rescission was made. They insist that the second deed from Johnson to Le Roy, conveying him lot No. 6 upon the recited consideration of $150 cash paid, constituted payment in full of the original vendor's lien note, and extinguished the lien against both lots. There is no merit in that contention. They further insist that the agreement between Johnson and Le Roy after the divorce and without the knowledge or consent of Mrs. Le Roy did not constitute a rescission. Appellee does not have to look to that agreement to sustain his action. As already said, on the facts of this case the sale by Johnson to King constituted a rescission, and if for any reason that sale did not perfect the rescission, the institution of this suit had that effect. There is no merit in their pleas of limitation. Having rescinded the original sale and taken possession, appellee was reinvested thereby with the equitable title to the property in controversy and the right of possession. The fact that the original vendor's lien note may have been barred by limitation at the time of the institution of this suit did not bar that right. In Bunn v. City of Laredo, supra, it was said: "This remedy to rescind and resort to the superior title has uniformly been held to be separate and distinct from and wholly independent of the remedy to subject the land to the payment of the purchase money by sale under foreclosure. * * * We think the conclusion follows that the rights of the vendor as holder of the superior title were not affected by the 1913 act, but that the only effect of that act as regards the superior title was to bar the right of action thereon when asserted in the courts. * * * And that when the city resorted to such remedy and repossessed itself of the lands, its title and possession were unassailable by those claiming under the unfulfilled contracts of sale."

We construe that case as being directly in point upon the facts of this case against appellants' propositions of limitation.

Affirmed.

#### On Rehearing.

Since it is not necessary to a decision of the case, we withdraw our conclusions as expressed in the original opinion, "the institution of this suit by King, the holder of the legal title, against appellants, who had defaulted in the payment of the vendor's lien note, within itself constituted a rescission," and "the fact that the original vendor's lien note may have been barred by limitation at the time of the institution of this suit" did not bar the right of rescission. We are satisfied as to the soundness of our conclusion that Johnson rescinded the same before the notes became barred by limitation and after the rescission sold to King, and that King, under that sale, entered possession and made the improvements. From this it would follow, of course, that there was no issue of limitation in the case.