Frank SLAVIK et al., Appellants,

v.

SOUTHERN MINERALS CORPORATION
and Arnold O. Morgan, Individually
and as Trustee, Appellees.

No. 4395.

Court of Civil Appeals of Texas.

Waco.

Oct. 7, 1965.

Rehearing Denied Oct. 28, 1965.

Branscome, Gary, Thomasson & Hall, Corpus Christi, for appellants.

Head & James, Kleberg, Mobley, Lockett & Weil, Corpus Christi, for appellees.

McDONALD, Chief Justice.

This is an appeal by plaintiffs from a summary judgment that plaintiffs take nothing.

Plaintiffs Slavik sued defendants Morgan and Southern Minerals Corporation to recover the sums of $183,332.62 and $28,918.-20, which they allege Southern Minerals wrongfully paid to Morgan out of oil runs from leases owned by plaintiffs. Plaintiffs further sued to recover $2650 from Southern Minerals for an overriding royalty interest in a tract called the "Hubble Lease" which plaintiffs allege had been assigned to them.

Plaintiffs' right to the $183,332.62 depends upon the construction of an assignment from Morgan to the Corpus Christi Corporation; plaintiffs' right to the $28,-918.20 depends upon the construction of an assignment from Morgan to Mustang Oil Corporation; and plaintiffs' right to the $2650 depends on whether plaintiffs have a valid assignment to the contended for overriding royalty interest in the "Hubble Lease."

The trial court entered summary judgment that plaintiffs take nothing on all the foregoing claims.

Plaintiffs appeal, contending the trial court erred in granting summary judgment because:

1) The assignment from Morgan to Corpus Christi Corporation requires cost of compressing gas to operate the leases be deducted from revenue from production, in computing the time when Morgan's $1,000,000 deferred production payment should commence; or the instrument was ambiguous as to the method to be utilized. (This involves the $183,332.)

2) The assignment from Morgan to Mustang was ambiguous as to the effect on the commencement date of Morgan's $1,000,000 production payment. (This involves the $28,918.)

3) Southern Minerals failed to establish there was no fact issue with respect to plaintiffs' right to the funds from the Hubble lease. (This involves the $2650.)

We revert to contention 1 and plaintiffs' contended for $183,332.

Defendant Morgan, by written assignment on December 1, 1953, sold and assigned 25 described lease properties to the Corpus Christi Foundation for a cash consideration, and subject to a deferred production payment of $1,000,000 out of 50% of the proceeds of production, to commence after Corpus Christi Foundation received $2,600,000 from the proceeds of 65% of the mineral estate (plus certain taxes and interest as provided in the assignment). Simultaneously Corpus Christi Foundation sold and assigned the same properties to Mustang Oil Corporation, reserving a $2,-600,000 production payment from 65% of the minerals produced. Mustang Oil Corporation was owned by plaintiffs, and has since liquidated, and assigned plaintiffs all its assets.

The calculation of the effective date of commencement of Morgan's $1,000,000 production payment is the question which determines whether plaintiffs are entitled to the $183,332 sued for. Plaintiffs contend the cost of compression and purchase of certain gas-lift gas was to be taken into account in computing when Morgan's million dollar production payment would commence. Southern Minerals, the operator, did not take the expense of the compression of gas-lift gas into account and commenced payments to Morgan. Had such expense been taken into account plaintiffs would have received $183,332 prior to payments to Morgan.

The question here is, does the assignment from Morgan to Corpus Christi Founda-

tion require the cost of compression of gas-lift gas to be taken into account in determining when Morgan's deferred production payment should commence; or is the assignment ambiguous on this point?

We must consider the December 15, 1953 assignment itself. By such instrument Morgan assigned Corpus Christi Foundation the described lease properties and mineral interests "subject to the deferred production payment of $1,000,000."

"There is * * * reserved to (Morgan) * * * as a deferred production payment * * * the proceeds of the oil, gas, and other minerals produced and saved from 50% of the interest herein transferred * * * commencing and effective from and after such time in the future as Assignee * * * shall have received, under this assignment, from the proceeds of 65% of the oil, gas, and other minerals produced and saved * * * over and above production, severance, occupation and other similar taxes and ad valorem taxes chargeable against such part of the mineral interests * * * the sum of $2,600,000, plus an additional amount equal to $5\frac{1}{4}\%$ per annum from and after December 15, 1963, calculated monthly on the unliquidated balance of said $2,600,000 remaining and continuing after such effective date until Morgan * * * shall have received over and above the amount necessary to pay all production, severance, gathering and similar taxes and also over and above any ad valorem taxes that (Morgan) may be required to pay upon the herein reserved deferred production payment, the net sum of $1,000,000 * * *.

"Assignee, or its successors in interest, shall keep an accurate record of the production of oil, gas, and other minerals from the assigned interests and of the amount of production, severance and other taxes chargeable thereon in order to accurately determine the ef-

fective date that said deferred production payment herein reserved to (Morgan) shall become effective, and such information shall be furnished (Morgan) at reasonable intervals upon request.

"The proceeds of the oil and gas production shall be determined after making deduction of oil and gas used in operation of the assigned properties * * *.

"The reference to such future date as Assignee * * * may have received * * * from the proceeds of 65% of the oil, gas or other minerals produced and saved from the herein assigned and transferred interests the net sum of $2,600,000 plus an additional amount equal to $5\frac{1}{4}\%$ per annum after December 15, 1953, calculated monthly on the unliquidated balance of said $2,600,000 remaining, is made solely for the purpose of fixing the date in the future at which the deferred production payment reserved by (Morgan) becomes effective and until such effective date, Assignee * * * shall be entitled to receive 100% of the proceeds accruing to the oil, gas and mineral interest * * * herein conveyed, on account of the production of oil, gas or other minerals therefrom. * * The share of the proceeds of oil, gas and mineral production to be applied upon (Morgan's) deferred production payment after its effective date and while it continues in force, shall be paid to the holder of such production payment free and clear of any expense of developing or operating the properties. * * *"

The reservation clause itself is clear that the $1,000,000 reserved production payment commences after Corpus Christi Foundation receives the $2,600,000 production payment plus specified taxes and interest. The provision requiring Assignee to keep records requires only records of the amount of production of oil and gas and the amount of

taxes. It does not require Assignee to keep a record of amounts expended for cost of compression and purchase of gas-lift gas. Since the record reflects this item was a large item (several times the amount of deductible taxes) had the parties intended such for consideration in determining the effective date of Morgan's payment, they would have required Assignee to keep a record of it.

The words "the proceeds of oil and gas production shall be determined after making deduction of oil and gas used in operation of the assigned properties," we think refers to production from the property in question. It does not refer to expense of compression or cost of gas purchased elsewhere.

It is true that the instrument refers later to the *"net* sum of $2,600,000" plus interest, but we think such provision read in connection with the balance of the instrument in its entirety cannot be construed to encompass the expense of compression and purchase of the gas-lift gas.

■ We think the instrument from its context as a whole does not require the cost of compression and purchase of gas-lift gas be included, and that such instrument is not ambiguous in such regard. See: Lone Star Gas Co. v. X-Ray Gas Co., 139 Tex. 546, 164 S.W.2d 504; Myers v. Gulf Coast Minerals Management Corp., Tex., 361 S.W.2d 193; Southland Royalty Co. v. Pan Am. Pet. Corp., Tex., 378 S.W.2d 50.

Moreover, the construction placed on the instrument by us and by the trial court appears to be the construction placed by the parties themselves, including plaintiffs, until shortly before the filing of the case. Plaintiffs' computations from 1953 to 1959 make no deductions of amounts for compression and purchase of gas-lift gas; and it was not until 1963, 2 years after Southern Minerals began paying Morgan his deferred production payment that plaintiffs asserted that amounts paid for compression and purchase of gas-lift gas should be deduct-

ed; and prepared computations to such effect.

■ Plaintiffs' 2nd contention is that the assignment from Morgan to Mustang was ambiguous as to the effect on the commencement date of Morgan's $1,000,000 production payment, and that Southern Minerals paid Morgan $28,918.20 wrongfully for such reason.

In 1956 Morgan and Mustang Oil Corporation settled a pending lawsuit, and as a part of such settlement Morgan asssigned a lease to Mustang reserving a production payment of some $112,000 to be paid free of cost and expense. The $28,918.20 here involved is the balance due on such production payment.

Such production payment was payable out of several sources, including:

"(c) Sixty-five percent of the oil, gas, and other minerals produced etc. * * in the assignment from Corpus Christi Foundation to Mustang Oil Corporation * * * from and after the date that the $2,600,000 interest bearing production payment reserved to Corpus Christi Foundation * * * is liquidated * * * ."

In December 1959, the Corpus Christi Foundation's $2,600,000 production payment was paid off. In June 1960 the $28,918.20 balance due on the production payment was paid to Morgan. There is no ambiguity in the 1956 assignment.

Plaintiffs' 3rd contention is that Southern Minerals failed to establish there was no fact issue as to the $2650.

■ Plaintiffs plead that 2 leases owned by E. C. Hubble had royalty payments due from the operator Southern Minerals in the amount of $2650; that plaintiff had been assigned such payments by Hubble. Assignments of such royalty interest in the record reflect that such royalty interest was assigned to the Bank of the Southwest to

secure an indebtedness and that when such indebtedness be discharged, such interest should be paid ⅕ to H. M. McCullough and ⅘ to Tidewater Oil Company. The assignment from Hubble to plaintiff recites that "it is my understanding that Tidewater and McCullough make no claim to such override * * *." The record on its face shows that title to the override stands in Bank of the Southwest or Tidewater and McCullough. It does not show it to stand in plaintiffs; and plaintiffs' brief concedes that they "may have fallen short of affirmatively proving plaintiffs' right to the $2650."

All of plaintiffs' points and the contentions thereunder made have been considered and are overruled.

Affirmed.