LOCUS CONSTRUCTION COMPANY,
INC., Appellant,

v.

William M. HOLLEY and National Surety
Corporation, Appellees.

No. 18582.

Court of Civil Appeals of Texas,
Dallas.

May 22, 1975.

Tom D. Matthews, Jr., Matthews, Matthews, Sechrist & Madrid, Dallas, for appellant.

James H. Baumgartner, Jr., Vial, Hamilton, Koch, Tubb, Knox & Stradley, Tom Sands, McDearman, Lair, Ballas, Sands & Pierce, Dallas, for appellees.

AKIN, Justice.

Locus Construction Company sued to recover money alleged to be fraudulently converted for the use and sole benefit of the defendant William Holley, a former executive vice president of Locus. Locus joined National Surety Corporation as a defendant to recover money allegedly due under a blanket position bond insuring Locus against any loss of money or other property which Locus sustained through any fraudulent or dishonest acts of any of its employees. Holley filed a counterclaim against Locus contending that Locus was indebted to Holley in the sum of $17,851 for services performed and moving expenses. Prior to submission of the case to the jury, Locus and Holley stipulated that Locus was entitled to recover from Holley the sum of $12,385.34 and that Holley was entitled to recover from Locus the sum of $5,660.73. The jury found that Holley should be paid $9,522.50 for services rendered and relocation expenses.

Based upon the jury's verdict and the stipulations of the parties, the trial court entered judgment that Locus take nothing from National Surety and that Holley recover from Locus the sum of $2,797.89 (the difference between the stipulated sums and the jury's award of money to Holley). Locus appeals.

Three questions are presented by this appeal: (1) Did the trial court err in failing to grant a new trial because the jury's answer in the negative to special issue number one was against the great weight and preponderance of the evidence? (2) Was Holley entitled to compensation awarded by the jury for services rendered after September 1971, the month for which Holley received his final monthly salary from Locus pursuant to the April 1971 agreement? (3) Did the trial court err in submitting to the jury the question of whether Holley should be reimbursed for his relocation expenses incurred upon his return to Dallas after termination of employment? We answer the first and third questions in the negative and the second in the affirmative. We, therefore, affirm the judgment of the trial court.

## Facts

From 1966 through part of 1972, Holley was employed by Locus as executive vice president in charge of all construction projects. In April 1971, Locus decided to discontinue its construction business. Locus's president and Holley agreed to a plan to complete all existing contracts. This agreement was reduced to writing in a memorandum dated April 27, 1971, from Locus's president to Holley. The agreement, provided among other things, that for a period of three months Holley was to be paid a salary of $1500 per month by Locus and that he was to receive a rent-free office for the guaranty period of a project known as the Arbrook job; and that Holley would handle any guaranty work on all jobs during the three-month period for cost plus ten percent with no charge for Holley's time. Pursuant to this agreement Holley continued the operation of Locus's construction project. Holley was unable to complete all projects within the three-month period set forth in the memorandum because one of Locus's subcontractors was unable to honor its contract on the Arbrook project due to financial difficulties. Completion of the Arbrook job was, therefore, substantially delayed.

In connection with the Arbrook project, Accent Electronics billed Locus in June 1971 for certain sound equipment it furnished. Holley directed Locus to make payments to Accent in the sum of $8,053.20 and, thereafter, invoiced Arbrook in his own name for this amount plus a profit. Holley received these funds from Arbrook but did not reimburse Locus. In November 1971, Holley entered the $8,053.20 in Locus's books as an account payable to Locus by Holley. This transaction was the basis of Locus's alleged cause of action against both Holley and National Surety.

In October 1971, Holley advised Locus's president that he could no longer continue to operate under the terms of the April 1971 agreement because of the delay precipitated by the subcontractor's insolvency. Locus's president advised Holley that he should continue with the project until completion, and that payment for Holley's additional services would be negotiated at a later time. No such negotiations, however, took place. Holley continued to work on Locus's contractual commitments until late September 1972, when the problems relating to the Arbrook project were finally solved. This litigation ensued.

*(1) Was the Answer to Special Issue Number One Against the Great Weight and Preponderance of the Evidence?*

■ In attacking the take-nothing judgment against National Surety, Locus contends that the trial court erred in failing to grant a new trial because the jury's answer to special issue number one is against the great weight and preponderance of the evidence. The jury answered in the negative the following question: "Do you find from a preponderance of the evidence that Holley caused Locus to expend $8,053.20 of Locus's funds to pay for materials *upon which only Holley benefitted*?" [Emphasis added.] We cannot agree with Locus's contention. It is undisputed that Holley caused Locus to expend the $8,053.20 to pay for materials on the Arbrook job; however, the phrase "upon which *only* Holley benefitted" is disputed. This language can be construed reasonably under the evidence that *both* Holley and Locus benefitted; hence, the jury's answer is supported by evidence in the record. A fair construction of the evidence is that Locus benefitted because it was obligated to complete its contract with Arbrook. Indeed, this was the very basis of Locus's memorandum agreement with Holley. We hold that the jury's answer was *not* against the great weight and preponderance of the evidence.

*(2) Compensation For Services Rendered after September 1971*

■ With reference to Holley's counterclaim for services rendered under the theory of quantum meruit the jury was asked the following question:

Do you find from a preponderance of the evidence that Holley at the insistence and request of Locus performed additional services for the benefit of Locus in excess of those services described in plaintiff's exhibit one [the April 27, 1971 agreement].

The jury answered this question in the affirmative. Locus contends that there is no evidence or in the alternative, insufficient evidence, to support the jury's response. We disagree.

Locus's president admitted that subsequent to April 1971, he and Holley had at least two telephone conversations during which Holley objected to the compensation provisions of the April 27, 1971, agreement. During these conversations, Locus's president instructed Holley to "go ahead with it [the contract work] and we will work it out [your compensation]."

Holley testified that he worked full time for Locus until April 1972, and part-time thereafter until September 1972. This additional work was primarily the result of the insolvency of Locus's mechanical subcontractor on the Arbrook project. This caused many unanticipated problems such as warranty disputes with the subcontractor's suppliers for equipment delivered but improperly installed. Holley employed additional personnel and personally directed them to complete the subcontractor's guaranty work. The uncontroverted evidence supports the jury's finding that work in addition to that contemplated by the memorandum agreement was performed by Holley and assented to by Locus.

Locus also argues that there is no evidence or, in the alternative, insufficient evi-

dence to support the jury's response to the following special issue:

Find from a preponderance of the evidence what is the fair and reasonable compensation, in place actually performed, and for substantially similar work for which additional services were performed by Holley?

The jury's answer was "$7,522.50." We cannot agree that this issue is not supported by evidence as Locus contends. Holley's uncontroverted testimony is that the fair market value of his services rendered for the six-month period from October 1971 to April 1972 was $1500 per month, and that for the period of April 1972 through August 1972, the value of his services to Locus was $300 per month. This testimony is sufficient evidence to support the jury's answer to this special issue.

■ Locus asserts that Holley is not entitled to recovery on his counterclaim for services rendered after September 1971, because the memorandum issued by Locus's president on April 27, 1971, set forth the exclusive terms of Holley's employment during Locus's shutdown of its construction business. The pertinent parts of this agreement prepared by Locus are as follows:

The agreement which we have reached is that I will furnish office space for yourself, rent free, for the guaranty period of the Arbrook and Sherman jobs. That you will handle any guaranty work on all jobs during that period for cost plus ten percent with no charge for your time. *This is not to include the subcontractor's guaranty work.* I will continue your salary for three months beginning with final payment on the J & J jobs or July 1, whichever occurs first. You are to be available to work out any problems that might arise on particularly Plainview, but any other jobs that, as of this date, are not complete as far as work, and are not outstanding on our books. [Emphasis added.]

We cannot agree with Locus's assertion that the agreement covered payment for these services because this agreement specifically excludes subcontractor's guaranty work. It is unchallenged in the record that the additional services rendered by Holley to Locus were occasioned by the insolvency of the mechanical subcontractor on the Arbrook job and specifically related to guaranty work of the insolvent subcontractor's suppliers. It is also undisputed that Holley continued to perform services for Locus on the Arbrook project until the latter part of September 1972, although Holley received his final paycheck from Locus on September 30, 1971. This continued service was approved by Locus.

### (3) Reimbursement for Relocation Expenses

■ Locus argues that the trial court erred in submitting an issue inquiring as to whether Locus agreed to pay Holley's expenses of relocation after termination of his employment. The jury answered this issue in the affirmative. Locus contends that the written employment contract signed by the parties on May 28, 1966, embodies all terms of the agreement between Holley and Locus pertaining to relocation expenses and, therefore, the trial court should have construed the agreement rather than submitting the issue to the jury. In the alternative, Locus contends that this issue lacks support in the evidence. The agreement provides: "The company will pay your moving expenses to Abilene, and if employment is ceased, will pay moving expenses from Abilene to Dallas." Locus concludes that pursuant to this agreement the court should have construed the term "moving expenses" to include only freight expenses of $611.50, which was incurred in moving Holley's furniture from Abilene to Dallas. We cannot agree with Locus's contention.

If the employment agreement of May 28, 1966 was the only evidence submitted pertaining to Locus's liability for Holley's relocation expenses, then it could be argued

that a fact question was not presented as to the intention of the party with reference to the term "moving expenses." We are not, however, confronted with such circumstances. Without objection from Locus, Holley testified that when he moved to Abilene from Dallas to commence employment with Locus, he was reimbursed for *moving expenses* which included the cost of maintaining two separate residences for three months. Holley further testified that upon termination of his employment, he incurred expenses of approximately $1400 as a result of again having to maintain two separate residences until August 1972, when his family was able to join him in Dallas. In addition to these expenses, Holley incurred freight expenses of $611.50 paid to a moving company for the transportation of his furniture from Abilene to Dallas. We cannot accept Locus's contention that "moving expenses" as set forth in the 1966 employment agreement means only freight expenses. In ascertaining the intent of the parties as to the meaning of a contract, the best evidence of such intent is the construction placed upon such contract by the acts of the parties. Lone Star Gas Co. v. X-Ray Gas, 139 Tex. 546, 164 S.W.2d 504, 508 (1942); United Founders Life Insurance Co. v. Carey, 363 S.W.2d 236, 243 (1962). Since Locus previously reimbursed Holley for moving expenses in excess of only freight costs under the May 1966 employment contract, it is reasonable to conclude that the parties intended the term "moving expenses" to entail the cost of maintaining two residences while Holley was returning to Dallas. The parties' prior acts indicate an interpretation was placed on the term "moving expenses" different from that now asserted by Locus. A fact question was, indeed, presented necessitating resolution by the jury.

Locus argues that the special issue with reference to relocation expenses should not have been submitted because "an affirmative answer would be against the overwhelming weight and preponderance of the evidence." This argument is without merit. The contention that an issue should not have been submitted because of the insufficiency of the evidence is subject to only one construction—that there is *no evidence* to warrant submission of the issue. Garza v. Alviar, 395 S.W.2d 821, 824 (Tex.1965). As we have previously observed, evidence was presented which warranted submission of the issue.

Locus further objects to the use of the words "relocation expenses" rather than "moving expenses" in submission of the special issue. This point was waived by Locus because it failed to object to the use of this term. Texas Rules of Civil Procedure, rule 272.

We, therefore, conclude that Locus's contentions are without merit. The judgment of the trial court is accordingly affirmed.